United States Court of Appeals,

Fifth Circuit.

No. 95-10591.

Melissa V. MAYS, Plaintiff-Appellee,

v.

Ben D. SUDDERTH;  Thomas Pack;  Erath County, Texas, Defendants,

and

David Coffee, Defendant-Appellant.

Oct. 15, 1996.

Appeal from the United States District Court for the Northern District of Texas.

Before GARWOOD, EMILIO M. GARZA and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

In this appeal we determine whether a sheriff is absolutely immune from suit and liability for damages in a civil action brought against him pursuant to 42 U.S.C. § 1983 for injuries resulting from the sheriff's attachment of the plaintiff in accordance with a judicial order, facially valid and within the court's jurisdiction.  The district court, in ruling on the defendant sheriff's motion for summary judgment, held, in pertinent part, that the sheriff was only qualifiedly immune from suit and refused to enter a judgment dismissing the plaintiff's § 1983 claims against the sheriff in his individual capacity.  We conclude that a government official's strict compliance with a facially valid judicial order issued by a court acting within its jurisdiction clothes the official with the absolute judicial immunity enjoyed by the judge issuing the order.  Accordingly, we reverse the district court's ruling that Sheriff Coffee is not entitled to absolute immunity, render partial summary judgment dismissing the § 1983 action for damages against the Sheriff, and remand the case to the district court for further proceedings.

I.

*FACTS AND PROCEEDINGS BELOW*

1

This suit arises out of the arrest and detention of the plaintiff, Melissa Mays, pursuant to a writ of attachment ordered by Judge Don Jones, a duly elected judge of the 266th Judicial District of Texas, and issued by defendant Thomas Pack, the District Clerk of that court. During June and July 1990, Judge Jones presided over the capital murder trial of Jerry Roland Garrett, who received legal representation from defendant Ben D. Sudderth. In the course of that representation, defendant Sudderth sought to subpoena Mays as a material defense witness and, at his request, defendant Pack twice issued a subpoena to secure her appearance at trial. Both subpoenas, issued respectively on June 11 and June 15, 1990, were returned unserved because they did not contain a correct address for Mays.[1]

Mr. Garrett personally filed an application for writ of attachment, dated July 3, 1990, requesting the court to issue a writ of attachment against two persons, other than Mays, who had failed to appear at trial in accordance with subpoenas served upon them. Some time thereafter, Judge Jones met in his chambers with defendants Sudderth and Pack concerning the application. Defendant Sudderth orally informed Judge Jones that Mays was a material witness whose presence he had been unable to secure although he had unsuccessfully attempted to serve her with a subpoena.[2] Judge

[1]The June 11, 1990 subpoena, which listed Mays' former address at 841 Bridle, Fort Worth, Tarrant County, Texas, was returned unserved with the notation, "moved to Aledo [Parker County, Texas]." The second subpoena, addressed to same street address in Aledo, Texas, was returned unserved by the Parker County sheriff's office with the comment, "Aledo & Weatherford said there is no address by the name of Bridle."

[2]The parties' versions of what happened in this meeting are divergent. The plaintiff alleges that defendant Sudderth informed Judge Jones that he had attempted to subpoena Mays and that she had not appeared; that defendant Pack advised Judge Jones and Sudderth that the subpoenas had been returned unserved; that Sudderth nonetheless insisted that a writ of attachment issue for Mays despite the lack of a legal basis for her arrest; and that Judge Jones and defendants Sudderth and Pack reached an agreement that Mays should be arrested despite the absence of legal cause and the lack of a sworn application for her arrest. The defendants presented summary judgment evidence that defendant Sudderth informed Judge Jones at the meeting that Mays was aware of the attempts to serve her with a subpoena, was avoiding service and would be leaving the state with her parents the next day. Consequently, Judge Jones instructed Sudderth to write Mays' name on his application for writ of attachment, and ordered defendant Pack to prepare a writ of attachment for Mays and the other individuals named in the application. For purposes of our ruling, the disparities in the parties' versions of what happened in the judge's chamber are not relevant.

Jones instructed Sudderth to add Mays' name in handwriting to the application for writ of attachment and ordered Pack to issue a writ of attachment for Mays. A "writ of attachment on body," signed by Judge Jones, was issued on July 11, 1990, ordering "any sheriff or constable within the State of Texas ... to forthwith attach the body of Malissa [sic] Mays ... and deliver said body safely to the possession of David Coffee, Sheriff, Stephenville, Erath County, TX to be produced before the 266th Judicial District Court of Erath County, Texas, on the 12th day of July, 19__ at 9:00 o'clock A.M. ..."

On July 11, 1990, Mays was taken into custody by Parker County Sheriff's deputies at her parent's home in Aledo. She was subsequently picked up by deputies of Erath County Sheriff David Coffee, the appellant herein, and booked into the Erath County jail pursuant to the writ of attachment served on Sheriff Coffee's office. Mays alleges that defendant Coffee complied with the writ despite knowledge that no legal basis existed for her attachment because the subpoenas that had been issued for Mays had been returned unserved. Mays was held overnight at the Erath County jail[3] and taken to court the next morning where she testified briefly that she had no knowledge of facts relevant to the case and was dismissed.

Mays brought a § 1983 action seeking compensatory and exemplary damages and injunctive and declaratory relief against attorney Sudderth,[4] District Clerk Pack, Sheriff Coffee and Erath County, Texas.[5] Pack and Coffee were sued in both their individual and official capacities. Mays alleged that Sheriff Coffee, "knowing that the first two subpoenas naming the Plaintiff had been

---

[3]Mays' parents were not permitted to post bail, although the defendants presented summary judgment evidence that she was released to her parents' custody the next morning before her court appearance.

[4]The complaint against Sudderth was dismissed without prejudice pursuant to Rule 3.1(h) of the Local Rules of the Northern District of Texas due to Mays' failure to move for default judgment in light of Sudderth's failure to timely answer her complaint.

[5]Mays additionally brought state law claims for assault, battery, intentional infliction of emotional distress, false arrest and false imprisonment, under the district court's supplemental jurisdiction. 28 U.S.C. § 1367. The district court found that the state tort claims against Pack and Coffee were barred by judicial immunity as the claims were not based on any tortious conduct of the defendants and arose solely from their compliance with Judge Jones' order of attachment. This ruling is not before us.

returned unserved to the Erath County Sheriff's Department, and knowing that there was no legal basis for the arrest of the Plaintiff, agreed and conspired with Sudderth, Pack and Judge Jones to serve the unlawful Writ of Attachment and cause the illegal arrest of the Plaintiff."[6] Defendants Pack, Coffee and Erath County jointly filed a motion for summary judgment, arguing in pertinent part that Pack and Coffee were absolutely immune from suit based on their execution of Judge Jones' order. The district court granted partial summary judgment in favor of District Clerk Pack on the ground that, in his individual capacity, he was absolutely immune from Mays' § 1983 damages claims. The court held, however, that Sheriff Coffee enjoyed only qualified immunity and that plaintiff was entitled to seek discovery on her § 1983 claims against him. Sheriff Coffee here appeals the district court's denial of his summary judgment motion.

## II.

### DISCUSSION

### A.

### Appellate Jurisdiction and Standard of Review

Although ordinarily only final judgments are reviewable on appeal, 28 U.S.C. § 1291, "the denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)(citing *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982)); *see Chrissy F. by Medley v. Mississippi Dept. of Public Welfare,* 925 F.2d 844, 848-49 (*Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno,* 547 F.2d 1, 3 (1st Cir.1976) 5th Cir.1991). We thus have jurisdiction to review Sheriff Coffee's claim that the district court erred in denying him summary judgment on the ground that he is not absolutely immune from suit.[7] We review the district court's

---

[6]The district court held that Sheriff Coffee in his individual capacity is not liable on the denial of bail claim. This ruling is not before this Court.

[7]In *Mitchell,* the Court held that the denial of a claim of qualified immunity is an appealable collateral order to the extent that the lower court decision turns on legal questions. *Mitchell,* 472

4

decision to deny summary judgment *de novo,* applying the same criteria employed by the court in the first instance. *See Johnson v. Odom,* 910 F.2d 1273, 1276-77 (5th Cir.1990)(denial of qualified immunity reviewed *de novo* ), *cert. denied,* 499 U.S. 936, 111 S.Ct. 1387, 113 L.Ed.2d 443 (1991). Thus, we will reverse if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

B.

*Absolute Immunity*

Sheriff Coffee contends that he shares Judge Jones' absolute immunity from suit for claims arising from the arrest and detention of Mays pursuant to the writ of attachment issued by the judge. The district court, relying on a decision that recognized that "[s]heriffs enjoy qualified immunity from damages for official actions taken in good faith," *Hamill v. Wright,* 870 F.2d 1032, 1036 (5th Cir.1989), held that Coffee was entitled only to qualified immunity for his actions in executing Judge Jones' order. The district court, however, erred in resting its analysis of the question solely on Sheriff Coffee's identity as sheriff, rather than evaluating his role in the context of this case. In order to determine "whether particular actions of government officials fit within a common law tradition of absolute immunity, or only the more general standard of qualified immunity, [courts] have applied a "functional approach,' ... which looks to "the nature of the function performed, not the identity of the actor who performed it.' " *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993)(quoting *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988)). Whether Sheriff Coffee is entitled to absolute immunity requires us to evaluate

U.S. at 530, 105 S.Ct. at 2817. The Court did not similarly limit the appealability of an interlocutory order denying absolute immunity, *see id.* at 525, 105 S.Ct. at 2815, and we need not determine at this juncture whether such a limitation is appropriate. The parties do not dispute that Sheriff Coffee acted pursuant to a facially valid order issued by a judge acting within his jurisdiction. The question presented here is whether, given such facts, Sheriff Coffee is absolutely immune from suit and liability. This is a question of law. *See Babcock v. Tyler,* 884 F.2d 497, 501 (9th Cir.1989), *cert. denied,* 493 U.S. 1072, 110 S.Ct. 1118, 107 L.Ed.2d 1025 (1990).

his role in executing a facially valid order in light of the judicial process of which he was a part.

It is well established that judges enjoy absolute immunity for judicial acts performed in judicial proceedings. *Pierson v. Ray,* 386 U.S. 547, 553-54, 87 S.Ct. 1213, 1217-18, 18 L.Ed.2d 288 (1967). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction.' " *Stump v. Sparkman,* 435 U.S. 349, 356-57, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978)(quoting *Bradley v. Fisher,* 13 Wall (80 U.S.) 335, 351, 20 L.Ed. 646 (1872)). This broad scope of immunity is afforded to judges for actions taken within their jurisdiction because their role in the judicial system requires that they enjoy freedom to determine the law unfettered by the threat of collateral attacks against the judge personally. Absolute judicial immunity is justified "by the long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 435, 113 S.Ct. 2167, 2171, 124 L.Ed.2d 391 (1993); *see also Burns v. Reed,* 500 U.S. 478, 494, 111 S.Ct. 1934, 1943, 114 L.Ed.2d 547 (1991)("Absolute immunity is designed to free the judicial process from the harassment and intimidation associated with litigation."); *Pierson,* 386 U.S. at 554, 87 S.Ct. at 1218 (absolute immunity is afforded " "not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' ")(quoting *Scott v. Stansfield,* L.R. 3 Ex. 220, 223 (1868)).

Absolute immunity applies to the judicial acts of judges acting within their jurisdiction even in suits brought pursuant to 42 U.S.C. § 1983, despite that statute's obvious focus on the unlawful acts of state officials.[8] *See Pierson,* 386 U.S. at 554, 87 S.Ct. at 1218 (section 1983 does not

---

[8]42 U.S.C. § 1983 "purports to subject "[e]very person' acting under color of state law to liability for depriving any other person in the United States of "rights, privileges, or immunities secured by the Constitution and laws.' " *Burns v. Reed,* 500 U.S. 478, 484, 111 S.Ct. 1934, 1938, 114 L.Ed.2d 547 (1991).

6

abrogate absolute immunity afforded judges under the common law).  Although the presumption in § 1983 actions is that government officials are protected in the exercise of their duties by qualified rather than absolute immunity, *see Burns v. Reed,* 500 U.S. 478, 486-87, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (citations omitted), § 1983 " "is to be read "in harmony with general principles of tort immunities and defenses rather than in derogation of them.' " *Id.* at 484, 111 S.Ct. at 1938 (citing *Imbler v. Pachtman,* 424 U.S. 409, 418, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1976)).  To determine whether a government official is absolutely immune from suit, the court must "undertake[ ] a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.' " *Antoine,* 508 U.S. at 432-33, 113 S.Ct. at 2169-70 (quoting *Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 2912, 57 L.Ed.2d 895 (1978).  Thus, in *Imbler v. Pachtman,* the Court concluded that the rationale underlying the absolute immunity accorded under common law to prosecutors for the initiation of suit and presentation of the state's case "dictate[s] the same absolute immunity under § 1983 that the prosecutor enjoys at common law."[9]  424 U.S. at 427, 96 S.Ct. at 993.  The Court observed that such immunity is necessary to ensure "the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."  *Id.* at 427-28, 96 S.Ct. at 993-94.  In defining the parameters of prosecutorial absolute immunity, however, the Court has found that prosecutors retain only qualified immunity for giving legal advice to police, *Burns,* 500 U.S. at 492-94, 111 S.Ct. at 1942-43, for participating in investigatory functions prior to establishing probable cause or initiating suit, *Buckley,* 509 U.S. at 274-75, 113 S.Ct. 2616-17, and for making out-of-court statements to the press.  *Id.* at 277-78, 113 S.Ct. at 2618.  In so concluding, the Court observed that the common law at the time of § 1983's enactment did not provide absolute immunity for these functions.  *See Burns,* 500 U.S.

---

[9]The Court observed that "[t]he common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties.  These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust."  *Imbler,* 424 U.S. at 422-23, 96 S.Ct. at 991.

7

at 493-94, 111 S.Ct. at 1943; *Buckley,* 509 U.S. at 275, 277, 113 S.Ct. at 2617-18.

When 42 U.S.C. § 1983 was enacted in 1871, the common law provided absolute immunity to government officials in their execution of facially valid judicial orders entered by a court of competent jurisdiction. As the Supreme Court observed that year in *Erskine v. Hohnbach:*

> The duties of the collector in the enforcement of the tax assessed were purely ministerial. The assessment, duly certified to him, was his authority to proceed, and, like an execution to a sheriff, regular on its face, issued by a tribunal having jurisdiction of the subject-matter, constituted his protection.
>
> Whatever may have been the conflict at one time in the adjudged cases, as to the extent of protection afforded to ministerial officers acting in obedience to process, or orders issued to them by tribunals or officers invested by law with authority to pass upon and determine particular facts, and render judgment thereon, it is well settled now, that if the officer or tribunal possess jurisdiction over the subject-matter upon which judgment is passed, with power to issue an order of process for the enforcement of such judgment, and the order or process issued thereon to the ministerial officer is regular on its face, showing no departure from the law, or defect of jurisdiction over the person or property affected, then, and in such cases, the order or process will give full and entire protection to the ministerial officer in its regular enforcement against any prosecution which the party aggrieved thereby may institute against him, although serious errors may have been committed by the officer or tribunal in reaching the conclusion or judgment upon which the order or process is issued.[2]
>
> [2] *Savacool v. Boughton,* 5 Wendell, 171; *Earl v. Camp,* 16 Id. 562; *Chegaray v. Jenkins,* 5 New York, 376; *Sprague v. Birchard,* 1 Wisconsin, 457.

81 U.S. 613, 14 Wall. 613, 20 L.Ed. 745 (1871); *see Savacool v. Boughton,* 5 Wend. 171 (discussing cases).[10]

The significant reasons underlying the grant of absolute immunity to those officials who carry out the facially valid orders of a court with proper jurisdiction are not difficult to discern.

_____

[10]Professors Prosser and Keeton have observed in their treatise on tort law that

> [S]o long as [a warrant] is valid upon its face, the weight of authority probably is that the officer is privileged to execute it even though he has personal knowledge of facts which should prevent the arrest, and may safely leave all responsibility to the court.[16]
>
> [16] *People v. Warren,* N.Y. 1843, 5 Hill 440; *Watson v. Watson,* 1 832, 9 Conn. 140; *O'Shaughnessy v. Baxter,* 1876, 121 Mass. 515; *Heath v. Halfhill,* 1989, 106 Iowa 11, 76 N.W. 522; *Rice v. Miller,* 1888, 70 Tex. 613, 8 S.W. 317; Second Restatement of Torts, § 124, Comment *b.* Contra: *Telefsen v. Fee,* 1897, 168 Mass. 188, 46 N.E. 562; *Leachman v. Dougherty,* 1876, 81 Ill. 324.

PROSSER AND KEETON ON TORTS, § 25, at 150 (5th ed. 1984).

"[E]nforcing or executing a court order is intrinsically associated with a judicial proceeding." *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994). As the Eighth Circuit has observed in addressing the immunity afforded prison wardens for continuing to incarcerate a prisoner pursuant to a valid court order, absolute immunity is essential to insure " "[t]he fearless and unhesitating execution of court orders [ ] necessary if the court's authority and ability to function are to remain uncompromised.' " *Patterson v. Von Reisen,* 999 F.2d 1235, 1240-41 (8th Cir.1993)(quoting *Coverdell v. Dept. of Social and Health Services, State of Washington,* 834 F.2d 758, 765 (9th Cir.1987); *see also Valdez v. City and County of Denver,* 878 F.2d 1285, 1288 (10th Cir.1989). Indeed, not only may the threat of litigation impede an official's compliance with judicial orders, but "fear of bringing down litigation on the [official] might color a court's judgment in some cases." *Coverdell,* 834 F.2d at 765 (9th Cir.1987)(quoting *Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno,* 547 F.2d 1, 3 (1st Cir.1976)). Moreover, because judges are absolutely immune from suit for judicial actions taken pursuant to their jurisdiction, to deny similar protection to government officials executing their orders would render the officials " "lightning rod[s] for harassing litigation aimed at judicial orders.' " *Id.* at 1289 (quoting *T & W Inv. Co. v. Kurtz,* 588 F.2d 801, 802 (10th Cir.1978)); *see Patterson,* 999 F.2d at 1240; *Coverdell,* 834 F.2d at 765; *Kermit Constr. Corp.,* 547 F.2d at 3. We note, moreover, the unfairness of imposing liability in this context—an official charged with executing a facially valid court order has no choice but to do so. Government officials "should not be required to make the Hobson's choice between disobeying the court order or being haled into court to answer for damages." *Patterson,* 999 F.2d at 1240; *see also Valdez,* 878 F.2d at 1289 (citing *T & W Co., Inc. v. Kurtz,* 588 F.2d 801, 802 (10th Cir.1978)); *United Steelworker's of America, AFL-CIO v. Bishop,* 598 F.2d 408, 414 (5th Cir.1979); *McCray v. Maryland,* 456 F.2d 1, 5 n. 11 (4th Cir.1972).[11] To

---

[11]In *Burns v. Reed,* the Supreme Court denied absolute immunity to prosecutors for advising police officers, observing that "it is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice.... Ironically, it would mean that the police, who do not ordinarily hold law degrees, would be required to know the clearly established law, but prosecutors would not." 500 U.S. at 495, 111 S.Ct. at 1944. In like vein, it is incongruous to shield the learned judge from liability while exposing to suit the typically less-schooled official following his orders.

hold otherwise would require sheriffs and other court officers enforcing facially valid orders "to act as pseudo-appellate courts scrutinizing the orders of judges." *Id.* at 1289. Such a result "is obviously untenable." *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1239 (7th Cir.1986).

Consequently, we conclude that an official acting within the scope of his authority is absolutely immune from a suit for damages to the extent that the cause of action arises from his compliance with a facially valid judicial order issued by a court acting within its jurisdiction. We therefore apply this rule to the case at hand.

Ms. Mays concedes that Judge Jones acted within the scope of his jurisdiction and thus enjoys absolute immunity from actions arising from his issuance of a writ of attachment to secure her presence as a witness in a trial over which he presided. Moreover, there is no question that Sheriff Coffee's conduct in arresting and detaining Mays was in compliance with this facially valid court order compelling him to do so. Mays contends, however, that Sheriff Coffee's alleged knowledge that there was no legal cause for the writ of attachment erodes any immunity the sheriff may have. Ms. Mays has not cited any case denying absolute immunity to government officials complying with facially valid court orders, and cases abound to the contrary. *See, e.g., Bush,* 38 F.3d at 847 (citing cases); *Valdez,* 878 F.2d at 1288 (same); *Henry,* 808 F.2d at 1239 (same).[12] Moreover, Mays makes no

---

[12] Mays' reliance on *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), *Brown v. Byer,* 870 F.2d 975 (5th Cir.1989), *Gay v. Wall,* 761 F.2d 175 (4th Cir.1985), and *Crane v. State of Texas,* 759 F.2d 412 (5th Cir.), *amended in part on denial of rehearing,* 766 F.2d 193 (5th Cir.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985), is misplaced. In *Malley,* the Supreme Court held that a police officer's discretionary act in seeking a warrant was entitled only to qualified immunity irrespective of his success in obtaining the warrant. 475 U.S. at 340-43, 106 S.Ct. at 1096-97; *see also Barr v. Abrams,* 810 F.2d 358, 362 (2nd Cir.1987)(distinguishing *Malley* because the investigators in *Barr* did not apply for the warrant but simply executed it in a concededly proper manner). In *Brown,* this court affirmed a judgment against a deputy constable who had altered a warrant issued for the arrest of an individual sharing the plaintiff's name, 870 F.2d at 976-77, and the court questioned whether a warrant thus altered could be considered "facially valid." *Id.* at 979. In *Gay,* the Fourth Circuit held that the plaintiff stated a cause of action where he alleged that the police detained him pursuant to a warrant after they learned that he was in fact innocent, 761 F.2d at 178-79, and thus addressed conduct of the police beyond the scope of the arrest warrant. At issue in *Crane* was a county's practice of issuing misdemeanor writs of capias through the clerk of court without an initial finding of probable cause by a magistrate, 759 F.2d at 414; thus, the case concerned the actions of government officials in the complete absence of a judicial order issued by a court of competent jurisdiction.

claim that Sheriff Coffee was in possession of any information that was not known by the judge issuing the writ of attachment. In effect, what Ms. Mays seeks is a requirement that Sheriff Coffee act as an appellate court evaluating the legality of a decision issued by a judge trained in the law and authorized to issue such orders. As we observed above, such a result is untenable.

In reversing, we note the limits of our decision. We do not hold that a state officer may never be held liable for the unquestioning execution of a judicial directive. "There are limits to how unlawful an order can be and still immunize the officer executing it." *Turney v. O'Toole,* 898 F.2d 1470, 1474 (10th Cir.1990). As the officer's immunity derives from that of the issuing judge, the order must be one for which the judge is absolutely immune from suit. *Id.* Thus, we do not find that a state official would be absolutely immune from suit based on compliance with an order issued by a judge acting "in the clear absence of all jurisdiction." *See Stump v. Sparkman,* 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978). Moreover, an official acting outside the scope of his authority does not enjoy absolute immunity for his actions. *Turney,* 898 F.2d at 1474 (citing *Cok v. Cosentino,* 876 F.2d 1, 3 (1st Cir.1989), and *Williams v. Wood,* 612 F.2d 982, 985 (5th Cir.1980)). Finally, our ruling does not address the liability of an officer whose conduct in executing a facially valid judicial order exceeds the scope of that order.

III.

*CONCLUSION*

For the foregoing reasons, the district court's denial of summary judgment in favor of Sheriff Coffee on appellee's § 1983 claims for damages against him in his individual capacity is reversed, summary judgment is granted in favor of the Sheriff dismissing that suit insofar as it seeks damages, and the case is remanded for further proceedings consistent with this opinion.

11