# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CORNELIUS ALSTON; GARY AULD;
DARREN D. BAJO; KEVIN BROOKS;
WALTER DEGUAIR; DANILO
DIMAPOLIS; RANDAL GOUVEIA; FOE
LIULAMA; ADRIAN LUCERNO; ERIC
MILLER; JAMIE TAFOYA,
        *Plaintiffs-Appellees,*

        v.

THOMAS READ; NETTIE SIMMONS,
        *Defendants-Appellants.*

No. 10-15332

D.C. No.
1:07-cv-00266-
SPK-LEK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Samuel P. King, Senior District Judge, Presiding

Argued and Submitted
October 13, 2011—Honolulu, Hawaii

Filed December 14, 2011

Before: Diarmuid F. O'Scannlain, Richard C. Tallman, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge O'Scannlain

20979

**COUNSEL**

John F. Molay, Deputy Attorney General, Department of the Attorney General, State of Hawaii, argued the cause for the defendants-appellants and filed the brief. Attorney General Mark J. Bennett and Deputy Attorneys General Caron M. Inagaki and Kendall J. Moser, Department of the Attorney General, State of Hawaii, were also on the brief.

Jack Schweigert, Jack Schweigert, PLC, Honolulu, Hawaii, argued the cause for the plaintiffs-appellees and filed the brief. Rory Soares Toomey, Rory S. Toomey Law Office, Honolulu, Hawaii, and Shannon Parrott, Honolulu, Hawaii, were also on the brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether state prison officials had a clearly established duty to seek out original court records in response

to a prisoner's unsupported assertion that he was being over-detained in violation of the United States Constitution.

I

A

Cornelius Alston was twice sentenced to a term of imprisonment in the Hawaii state prison system under two separate, unrelated sentencing orders. He was convicted of second-degree robbery in 1991. While on parole from the robbery sentence in 1997, he was convicted of two counts of promoting a dangerous drug and was sentenced to ten years in prison on the first count and five on the second. The judgment, issued November 20, 1997, stated: "Sentences are to run concurrently." Alston's release date was calculated as August 4, 2007, by the Offender Management Office of Hawaii's Department of Public Safety ("DPS").

On December 10, 1997, the sentencing judge ordered that Alston's sentences for the drug offenses "run concurrent with each other and any other sentence Defendant is serving." There is no evidence that DPS ever received a copy of this order.

Until 2005, DPS had a practice of treating sentences issued at different times for different crimes as concurrent unless the judgment for the later crime stated that they were to be served consecutively. Such practice was inconsistent with Hawaii state law, which, when Alston was sentenced, required that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms run concurrently." Haw. Rev. Stat. § 706-668.5(1) (2007). To conform the Department's practice to state law, Thomas Read, the Administrator for DPS's Offender Management Office, implemented a new policy beginning January 1, 2005, that treated sentences issued at different times for different crimes as consecutive unless the judgment stated that they

were to be served concurrently. Thus, sentences of prisoners sentenced before 2005 were reviewed and, where necessary, recalculated.

In June 2007, Nettie Simmons, a litigation coordination specialist working under Read's supervision, sent Alston a letter telling him that his sentence had been recalculated to conform to Hawaii state law. His new maximum term release date was set for November 17, 2011—more than four years later than his original release date.

Alston wrote several letters complaining that his new release date was incorrect. In a July 2007 letter, he argued that because the November 1997 judgment stated that his sentences were "to run concurrently," DPS should not have applied section 706-668.5 of the Hawaii Revised Statutes when calculating his release date. In a letter signed by both Simmons and Read, Simmons explained:

> You are correct in that your sentence for Cr. No. 97-0506 [drug-related convictions] does state 'sentences are to run concurrently' which refers to the two counts in that criminal case alone, and both are running concurrently. However, pursuant to HRS § 706-668.5, the sentence term in Cr. No. 97-0506 imposed on November 20, 1997 shall run *consecutive* to Cr. No. 87-0457 [robbery conviction], which was imposed at a different time.

Alston sent two subsequent letters alleging that his November 1997 sentence and conviction were incorrect. He stated in one letter: "Judge Herbert K. Shimabukuro: On 11-20-97, sentenced me to 10 years in prison on count # 97-0506 to run 'concurrently.' . . . The mistake is that Mr. [sic] Nettie Simmons of D.P.S. applied the HRS 706-668.5 consecutive sentence statute to my case. I was not given any consecutive term." He followed this letter with another that made several new allegations not at issue here and again claimed that his

sentence was not supposed to be consecutive. Simmons, in a letter also signed by Read, responded in relevant part:

> The Department of Public Safety (PSD) interprets all legal documents received from courts according to state law and does not have any authority over the judges [sic] decisions or the judiciary.
>
> . . . [A]n audit was conducted back in June 2007 to ensure the accuracy of your sentence computation. During our review, it was determined that your sentence computation was computed in error which resulted in a wrong maximum release date.
>
> At this time, no adjustments to your maximum release date will be done. In addition, an amended judgment for Cr. No. 97-0506 is needed from the courts stating your time to 'run concurrent with any time currently serving' in order for PSD to update our records.

On Alston's behalf, the Office of the Public Defender then successfully sought an amended judgment, which was issued on December 27, 2007. Alston was released that same day.

B

Alston and a group of allegedly similarly situated state prisoners brought suit under 42 U.S.C. § 1983 against Read and Simmons in the district court for the District of Hawaii alleging that they were overdetained in violation of federal and state law. Read and Simmons moved for partial summary judgment as to Alston's claims only.

The district court granted the motion with respect to the claims of state law violations but otherwise denied it. The court found that there were genuine issues of fact as to whether Alston had been deprived of meaningful process in

violation of the Due Process Clause of the Fourteenth Amendment and whether Read and Simmons had acted with deliberate indifference in response to Alston's overdetention claim in violation of the Eighth Amendment.

The district court further concluded that it could not grant either officer qualified immunity at the summary judgment stage because there were questions of material fact as to whether Read and Simmons had conducted a proper investigation of Alston's claim that his sentence was incorrectly calculated. Read and Simmons timely filed this interlocutory appeal of the denial of qualified immunity.

II

[1] Read and Simmons contend that the district court erred in denying them qualified immunity. Alston responds that we lack jurisdiction over this appeal because the district court concluded that there were genuine issues of material fact for trial.

[2] When evaluating a denial of summary judgment on the issue of qualified immunity, our review is limited to the "purely legal issue whether the facts alleged . . . support a claim of clearly established law." *Moran v. Washington*, 147 F.3d 839, 843 (9th Cir. 1998) (internal quotations omitted). We may not review a district court's denial of summary judgment "insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Id.* (quoting *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995)). In other words, we "lack[ ] jurisdiction over an interlocutory appeal challenging the sufficiency of the evidence supporting the trial court's conclusion that an issue of fact exists." *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001) (citing *Johnson*, 515 U.S. at 313).

[3] But Read and Simmons are not contesting the district court's conclusion that genuine issues of fact exist for trial.

Rather, they are appealing the purely legal issue of whether they violated Alston's clearly established federal rights. *Compare Johnson*, 515 U.S. at 307-08, 315 (concluding that there was no "final" decision to review where the record "raised a genuine issue of fact concerning [defendants'] involvement"), *with Moran*, 147 F.3d at 844-45 (finding jurisdiction even though the district court concluded that there were genuine issues of material fact because the defendant was not asserting that there was insufficient evidence but rather that the district court had misapplied the law). Thus, we conclude that we possess appellate jurisdiction over this appeal under 28 U.S.C. § 1291. *See Moran*, 147 F.3d at 844.

## III

### A

**[4]** Government officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity inquiry is two-pronged. We must ask whether "the officer's conduct violated a constitutional right" and whether "the right was clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). We may conduct this two-pronged inquiry in any order. *See Pearson*, 555 U.S. at 236. Alston bears the burden of showing that the right at issue was clearly established. *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002) (citing *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993)).

For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It is not sufficient to allege the violation of "abstract rights."

*Id.* at 639. Rather, the right the officials are alleged to have violated must be " 'clearly established' in a more particularized, and hence more relevant, sense." *Id.* at 640; *see also Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (concluding that while the plaintiff had the right to be free from wrongful incarceration, the relevant qualified immunity inquiry was whether the plaintiff had provided any evidence that a reasonable official in the defendant's position would have known that by failing to monitor state appellate court decisions for changes to the law, he would be violating the plaintiff 's constitutional rights).

Applying these principles here, we must determine whether Read and Simmons would have understood that they were violating Alston's right to be free from wrongful incarceration by failing to review his court file to ensure that they had received all relevant court documents in his case. Viewing the facts in Alston's favor, Read and Simmons had notice only that possibly hundreds of prisoners had sentences recalculated under DPS's change in policy contrary to the unexpressed intent of sentencing judges unaware of the policy change. Alston's institutional file contained a copy of the November 1997 judgment, which was silent as to whether the sentence was to run concurrent or consecutive with previous sentences. Alston's recalculated sentence, based on the information in the judgment, conformed to Hawaii state law. The institutional file did not contain the December 10, 1997, order, of which neither the prison officers nor Alston were aware until after Alston's release ten years later.

**[5]** The relevant inquiry is thus whether a reasonable official would have known that he or she had a duty to investigate an overdetention claim in these circumstances by obtaining the prisoner's original courthouse file.

B

Alston contends that Ninth Circuit precedent establishes such a duty. He points first to *Haygood v. Younger*, 769 F.2d

1350 (9th Cir. 1985) (en banc), which concluded that an over-detention caused by the erroneous calculation of a prisoner's release date had violated the prisoner's Eighth and Fourteenth Amendment rights. But in that case, the defendant-officials "after being put on notice, simply refused to investigate a computational error." *Id*. at 1355 (internal quotations omitted). Here, Read and Simmons confronted materially different circumstances. Whereas Haygood challenged the officials' interpretation of the state statutes under which his sentence was calculated, *id*. at 1353, Alston argued only that Read and Simmons should not have applied the relevant state statute and failed to present any documentary evidence that Read and Simmons were misinterpreting his sentences. Indeed, Read and Simmons were trying to *correct* the computation of his sentence to make sure it conformed to unambiguous state law.

Alston also cites *Alexander v. Perrill*, 916 F.2d 1392 (9th Cir. 1990), which affirmed the denial of summary judgment on the issue of qualified immunity where a prisoner was over-detained after the defendant-officials "made no inquiries [and] conducted no investigation" in response to the prisoner's objection that his credit for time served had been erroneously reduced. *Id*. at 1393-94. Unlike the prisoner in *Alexander*, who "offered verified court documents and other proof" in support of his overdetention claim, *id*. at 1399, Alston's letters referred Read and Simmons only to the November 1997 judgment that was already in his institutional file. As Simmons and Read reasonably explained in their letter to Alston, that judgment did not support Alston's claim that his sentence was erroneously calculated.

**[6]** Thus, neither *Haygood* nor *Alexander* establishes a duty to obtain a prisoner's court file where the institutional file appears complete, the sentence was appropriately recalculated under state law, and the prisoner has presented no evidence to the contrary. Read and Simmons were entitled to rely on the state statute and the original judgment received from the court in their sentencing calculations and were not

required to go in search of additional courthouse records that might affect Alston's sentence beyond what was initially received from the court for inclusion in DPS's institutional file. *See Stein v. Ryan*, No. 10-16527, ___ F.3d ___, 2011 WL 5607646, at *4 (9th Cir. Nov. 18, 2011) ("Prison officials may properly assume that they have the authority to execute the sentencing orders delivered to them by the court without fear of civil liability.").

IV

**[7]** We conclude that there is no clearly established duty on a prison official to review a prisoner's original court records beyond those in his institutional file on the facts of this case. Thus, Read and Simmons are entitled to qualified immunity.

REVERSED and REMANDED for proceedings consistent with this opinion.