**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JESSE K. ENGEBRETSON;
CATHERINE T. ENGEBRETSON,
*Plaintiffs-Appellants*,

v.

MIKE MAHONEY, Warden,
Montana State Prison; STATE
OF MONTANA; WILLIAM
SLAUGHTER, Director of the
Department of Corrections
for the State of Montana,
*Defendants-Appellees.*

No. 10-35626

D.C. No.
9:09-cv-00098-
DWM

ORDER AND
AMENDED OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
April 8, 2013—Seattle, Washington

Filed May 30, 2013
Amended June 28, 2013

Before: Dorothy W. Nelson, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

## SUMMARY[*]

### Civil Rights

Affirming the district court's Fed. R. Civ. P. 12(b)(6) dismissal of a complaint, the panel held that prison officials enjoy absolute immunity from liability under 42 U.S.C. § 1983 for conduct prescribed by facially valid court orders.

Plaintiffs sought  money damages for an alleged illegal term of probation.  The panel held that prison officials who simply enforce facially valid court orders are performing functions necessary to the judicial process and they must not be required to second-guess the courts if that process is to work fairly and efficiently.

### COUNSEL

Kayla Liatti (argued) and Claudia Menjivar (argued), Ninth Circuit Clinical Externship, Loyola Law School, Los Angeles, California; Erica L. Reilley, Jones Day, Los Angeles, California, for Plaintiffs-Appellants.

Brenda K. Elias (argued) and Ira Eakin, Special Assistant Attorneys General, Montana Department of Corrections, Helena, Montana, for Defendants-Appellees.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**ORDER**

The opinion filed on May 30, 2013, is amended as follows:

Slip opinion page 11, note 3, lines 5–7: Replace <*Mays v. Sudderth*, 97 F.3d 107, 112–13 (5th Cir. 1996) (absolute immunity for sheriff's attachment of prisoner pursuant to a court order, even though sheriff allegedly knew the order was invalid)> with <*Mays v. Sudderth*, 97 F.3d 107, 112–13 (5th Cir. 1996) (absolute immunity for sheriff who attached a prisoner pursuant to a facially valid court order issued within the scope of the court's jurisdiction)>.

Slip opinion page 13, note 6, line 2: Replace <sentencing date> with <release date>.

No future petitions for panel rehearing or petitions for rehearing en banc will be entertained.

---

**OPINION**

CALLAHAN, Circuit Judge:

In this appeal we are asked to decide whether prison officials enjoy absolute immunity from liability under 42 U.S.C. § 1983 for conduct prescribed by facially valid court orders. We conclude that they do.

## BACKGROUND

In 1993, Plaintiff-Appellant Jesse Engebretson pleaded guilty to four counts of sexual assault. The state trial court sentenced him to four concurrent 20-year prison terms. The court also found that because Engebretson had been convicted of burglary (a felony) within five years of committing the sexual assaults, he was a persistent felony offender under Montana law. *See* Mont. Code Ann. § 46-18-501. The court accordingly sentenced Engebretson to serve an additional 30 years in prison, to run consecutively to the assault sentences. However, the trial court suspended Engebretson's entire 30-year sentence and imposed probation instead, even though Montana's persistent felony offender law provides that "the imposition or execution of the first 5 years of a sentence imposed under" the law "may not be deferred or suspended." *Id.* § 46-18-502(3).

Engebretson did not appeal, and he began serving his 20-year prison sentence in November 1993. He was discharged for good behavior about ten years later, in September 2003. Engebretson then began serving his probationary term under the supervision of a probation officer.

Three years later, while he was on probation, Engebretson filed a habeas petition with the Montana Supreme Court. He argued that the state trial court's sentencing order was illegal because his entire 30-year persistent felony offender sentence was suspended, in violation of § 46-18-502(3). In other words, the law required Engebretson to serve at least five years of his 30-year sentence in prison. The Montana Supreme Court granted Engebretson's petition, concluding that the "sentencing court lacked authority to suspend

Engebretson's entire sentence as a persistent felony offender."

On remand, the state trial court (through a different judge) adjudged Engebretson guilty of the four counts of sexual assault for which he previously had been charged, sentenced him to four concurrent 20-year terms (with credit for time served), and prescribed "terms and condition[s] of probation of any remaining time." However, the court proceeded to amend the judgment to state that Engebretson's "sentence has been discharged," and to delete all the terms and conditions of his probation. The court's orders did not mention Engebretson's status as a persistent felony offender, and they did not impose a five-year prison term under § 46-18-502(3). The State did not appeal.

Nearly two years later, Engebretson and his wife, Catherine Engebretson, filed a *pro se* action under 42 U.S.C. § 1983 in federal district court against Defendants-Appellees Mike Mahoney, the warden of the prison where Engebretson had served his sentence, and William Slaughter, the director of the Montana Department of Corrections. In an amended complaint, which added the State of Montana as a defendant, the Engebretsons alleged that Mahoney and Slaughter "would only release me [Jesse Engebretson] to a probationary sentence, even though I had informed them that such was an illegal sentence." In other words, the Engebretsons sought damages because Jesse Engebretson was released from prison *earlier* than he should have been.[1] The Engebretsons more

---

[1] Engebretson apparently thought he should not have been sentenced to probation, either, as the state trial court did not identify him as a persistent felony offender, and therefore did not impose a five-year prison term or probation, on remand from the Montana Supreme Court.

specifically alleged that: (1) Mahoney and Slaughter "had a duty to ascertain that I [Jesse Engebretson] had a legal sentence prior to accepting me into their custody;" (2) Engebretson "was stopped from filing in the court by the lack of legal reference materials" during his imprisonment; and (3) Engebretson was "stopped from gaining the assistance" of another inmate in his legal filings during his imprisonment, after that inmate "was moved to another facility after the Department of Corrections found out that he was assisting inmates in their legal research." The complaint also alleged that Mahoney, Slaughter, and Jesse Engebretson's probation officer (who was not named as a defendant) unconstitutionally restrained Engebretson's liberty during his "illegal" term of probation. The Engebretsons sought $10 million in damages.

The defendants filed a motion to dismiss the complaint for lack of jurisdiction and failure to state a claim. Upon a magistrate's recommendation, the district court dismissed the claims against Mahoney and Slaughter because they

> subjected Jesse Engebretson to restrictions on his liberty based on a facially valid court order. Even though the order was later invalidated by the Montana Supreme Court, they cannot be held liable for complying with the order while it was in place.

The district court also dismissed the Engebretsons' claims against the State of Montana on Eleventh Amendment grounds, and declined to exercise supplemental jurisdiction over a state-law loss-of-consortium claim that Catherine Engebretson appeared to assert in the amended complaint. The Engebretsons appeal only the district court's conclusion

that Mahoney and Slaughter are entitled to absolute immunity.

## STANDARDS OF REVIEW

We review *de novo* the district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Botello v. Gammick*, 413 F.3d 971, 975 (9th Cir. 2005). We must "take as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011). "[W]e construe pro se complaints liberally and may only dismiss a pro se complaint for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks omitted). Finally, we review *de novo* whether a public official is entitled to absolute or qualified immunity. *Slater v. Clarke*, 700 F.3d 1200, 1203 (9th Cir. 2012); *Botello*, 413 F.3d at 975.

## DISCUSSION

Although the parties and the district court do not discuss it, the first question we must address is whether the Engebretsons have standing to bring this action. Jesse Engebretson did not suffer any actual injury from the defendants' enforcement of the state court's unlawful sentencing order; indeed, that order saved him five years' mandatory prison time. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (explaining that the "basic purpose of § 1983 damages is to *compensate persons for injuries* that are caused by the deprivation of constitutional rights" (quotation marks omitted)).

However, Jesse Engebretson alleges that the term of *probation* prescribed by the state court's sentencing order, and enforced by the defendants, was unlawful because, after the Montana Supreme Court vacated and remanded the state trial court's initial sentencing order, a different trial judge did not identify him as a persistent felony offender and accordingly relieved him of any further prison or probation time. In other words, in Engebretson's view, he never should have served *any* probation time. Engebretson also alleges that the defendants had a duty to investigate whether the initial sentencing order was lawful before enforcing it. While we think these allegations lack merit, because we are reviewing this case at the dismissal stage, and because the Engebretsons proceeded *pro se* below, the allegations are sufficient for purposes of standing to assert a § 1983 claim. *See Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002) ("We are doubtful that Bernhardt's damages claims are plausible . . . . But we accept her allegations because we examine only the face of her complaint and therefore conclude that she has standing to pursue her claim for damages."). Finally, even without any actual injury for which they may seek compensatory damages, the Engebretsons would be entitled to nominal damages under § 1983 if they can establish a violation of a constitutional right. *See Memphis Cmty. Sch. Dist.*, 477 U.S. at 308 n.11; *Bernhardt*, 279 F.3d at 872.

The next question is whether prison officials who, like Mahoney and Slaughter, simply enforce facially valid court orders are absolutely immune from any liability under § 1983. We have not yet had occasion to address this question. *See Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (Gould, J., concurring). However, several of our cases point in the direction of absolute immunity. In *Hoffman v. Halden*,

268 F.2d 280, 301 (9th Cir. 1959), *overruled on other grounds by Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962) (en banc), we held that a hospital superintendent who prevented the prisoner from leaving a mental hospital pursuant to a court order "enjoyed the immunity of a jailor." We explained:

> We think the failure of a jailor or keeper to release a prisoner held on a warrant or commitment cannot be the basis for a civil rights action regardless of allegations of malice, motive or intent. His act is required by law. Even if the statute were later held void or the conviction later set aside, so long as he acted under authority of the writ or warrant, he was performing a duty which the law at that time required him to perform.

*Id.* at 300. In *Coverdell v. Department of Social & Health Services*, 834 F.2d 758, 762–65 (9th Cir. 1987), we held that a child services worker who faithfully executed a court order to apprehend a child from her mother enjoyed absolute quasi-judicial immunity. *See id.* at 765 ("The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised."). And in *Miller v. Gammie*, 335 F.3d 889, 895–96 (9th Cir. 2003) (en banc), we explained that "when Congress enacted § 1983, it was aware of a well-established and well-understood common-law tradition that extended absolute immunity to individuals performing functions necessary to the judicial process."

The Supreme Court also has not decided whether prison officials are entitled to absolute immunity from § 1983

liability for enforcing facially valid court orders. However, the Court has long expressed the general idea that public officials who ministerially enforce facially valid court orders are entitled to absolute immunity. *See, e.g.*, *Matthews v. Densmore*, 109 U.S. 216, 218–19 (1883); *Erskine v. Hohnbach*, 81 U.S. 613, 616–17 (1872). More directly relevant here, the Court has extended absolute immunity in § 1983 cases where doing so would "free the *judicial process* from the harassment and intimidation associated with litigation." *Burns v. Reed*, 500 U.S. 478, 494 (1991).[2]

In recent years, the Supreme Court has emphasized this functional approach for determining when public officials may claim absolute immunity under § 1983. An official must be "performing a duty functionally comparable to one for which officials were rendered immune at common law," and "it is only the specific function performed, and not the role or title of the official, that is the touchstone of absolute immunity." *Miller*, 335 F.3d at 897 (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36 (1993); *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)).

Consistent with this functional approach, the courts of appeals that have addressed whether prison officials are

---

[2] For example, the Court has extended absolute immunity to prosecutors and judges for their roles in judicial proceedings. *See Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976); *Pierson v. Ray*, 386 U.S. 547, 554–55 (1967). In contrast, the Court has declined to extend absolute immunity to judges and prison, school, and executive officials acting in their non-judicial capacities. *See, e.g.*, *Forrester v. White*, 484 U.S. 219, 229–30 (1988); *Harlow v. Fitzgerald*, 457 U.S. 800, 813 (1982); *Cleavinger v. Saxner*, 474 U.S. 193, 203–06 (1985); *Procunier v. Navarette*, 434 U.S. 555, 561 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 247–48 (1974).

absolutely immune from § 1983 liability for enforcing facially valid court orders have uniformly concluded that they are. Absolute immunity applies even where a prisoner claims that the order at issue is invalid or the order is later overturned. *See, e.g.*, *Figg v. Russell*, 433 F.3d 593, 599 (8th Cir. 2006) (absolute immunity for prison officials who confined the prisoner pursuant to "facially valid orders" before a habeas writ was issued); *Hamilton v. Leavy*, 322 F.3d 776, 782–83 (3d Cir. 2003) (explaining that, in a case against prison officials, an "action taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages"); *Patterson v. Von Riesen*, 999 F.2d 1235, 1239–41 (8th Cir. 1993) (prison wardens enjoyed absolute immunity for continuing to incarcerate prisoner pursuant to a valid court order, even though the prisoner claimed he was wrongfully convicted and his conviction was later overturned); *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1287–89 (10th Cir. 1989) (law enforcement officials entitled to absolute immunity for imprisoning plaintiff at direction of county judge, even though plaintiff was later released on a habeas writ); *Francis v. Lyman*, 216 F.2d 583, 585 (1st Cir. 1954) (same with respect to state judge order); *Ravenscroft v. Casey*, 139 F.2d 776, 778 (2d Cir. 1944) ("Whether [the judge's] orders were correct or erroneous he had jurisdiction to make them and they provide immunity to the jail authorities who did nothing other than perform them.").[3]

---

[3] The courts have similarly extended absolute immunity to law enforcement and other public officials who simply enforce facially valid sentencing orders. *See, e.g.*, *Moss v. Kopp*, 559 F.3d 1155, 1163–68 (10th Cir. 2009) (absolute immunity for sheriff's deputies enforcing court search orders); *Mays v. Sudderth*, 97 F.3d 107, 112–13 (5th Cir. 1996) (absolute immunity for sheriff who attached a prisoner pursuant to a facially valid court order issued within the scope of the court's jurisdiction); *Bush v.*

We now join our sister circuits and hold that prison officials charged with executing facially valid court orders enjoy absolute immunity from § 1983 liability for conduct prescribed by those orders. Our reasons are straightforward. First, such immunity is grounded in the common law. *See Patterson*, 999 F.2d at 1240; *Valdez*, 878 F.2d at 1287; *Francis*, 216 F.2d at 588–89; *cf. Miller*, 335 F.3d at 895–96 (recognizing the "common-law tradition that extended absolute immunity to individuals performing functions necessary to the judicial process"). Second, such immunity is consistent with the Supreme Court's recent case law, because it is beyond dispute that prison officials enforcing court orders are "performing functions necessary to the judicial process." *Miller*, 335 F.3d at 895–96.[4] It is no accident that most courts refer to absolute immunity for prison officials enforcing court orders as "quasi-judicial

---

*Rauch*, 38 F.3d 842, 847–48 (6th Cir. 1994) (absolute immunity for probate official who enforced court order requiring that juvenile be placed in detention home, even though subsequent investigation revealed that the court order was based on incomplete information); *Roland v. Phillips*, 19 F.3d 552, 556 (11th Cir. 1994) (holding that county law enforcement officials had absolute immunity in § 1983 action arising from their actions in enforcing facially valid judicial orders).

[4] *See also Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001) ("The absolute immunity afforded to judges has been extended to apply to 'quasi-judicial conduct' of '[n]on-judicial officials whose official duties have an integral relationship with the judicial process.'" (citation omitted)); *Ostrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999) (holding that "'quasi-judicial' agency officials whose duties are comparable to those of judges or prosecutors" are likewise entitled to absolute immunity).

immunity."[5]   Third, absolute immunity is necessary to free prison officials from the fear of litigation and "insure that such officials can perform their function without the need to secure permanent legal counsel." *Valdez*, 878 F.2d at 1288; *see also id.* at 1289 ("Officials such as the defendants must not be required to act as pseudo-appellate courts scrutinizing the orders of judges."). Finally, absolute immunity ensures "the public's trust and confidence in courts' ability to completely, effectively and finally adjudicate the controversies before them." *Id.* at 1289.

The Engebretsons nonetheless argue against absolute immunity on two grounds. First, they contend that we are bound by two prior Ninth Circuit cases which held that the defendant prison officials were entitled to qualified immunity. *See Alston v. Read*, 663 F.3d 1094, 1098–1100 (9th Cir. 2011); *Stein v. Ryan*, 662 F.3d 1114, 1119–20 (9th Cir. 2011). However, only *Stein* was concerned with liability for the officials' enforcement of a facially valid court order,[6] and in both cases, the parties did not brief, and we did not address, whether the prison officials were entitled to absolute immunity. *Alston* and *Stein* accordingly do not dictate our

---

[5] The exception is the Third Circuit, which reserves "quasi-judicial immunity" for circumstances in which a defendant is "acting in a role that is functionally comparable to that of a judge, rather than under the authority of a court order." *Hamilton*, 322 F.3d at 783 n.5.

[6] *Alston* was concerned with whether the prison officials were liable for incorrectly calculating the defendant's release date pursuant to an internal policy, not with their mere enforcement of a court order. *See* 663 F.3d at 1096–97. We have consistently analyzed such claims under a qualified immunity rubric. *See, e.g.*, *Alexander v. Perrill*, 916 F.2d 1392, 1393–94 (9th Cir. 1990); *Haygood v. Younger*, 769 F.2d 1350, 1356–59 (9th Cir. 1985) (en banc).

answer to that question. *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (prior rulings do not serve as binding precedent on issues "never squarely addressed"); *Morales-Garcia v. Holder*, 567 F.3d 1058, 1064 (9th Cir. 2009) (explaining that while three-judge panels are bound by prior decisions, "the term 'decision' . . . encompasses only those issues that are raised or discussed").

Second, the Engebretsons argue that qualified immunity is sufficient to protect prison officials enforcing court orders. It is true that there is a presumption in favor of qualified immunity, and that a defendant public official bears the burden of showing a need for absolute immunity. *Antoine*, 508 U.S. at 433 n.4; *Miller*, 335 F.3d at 897. That burden is met here. "[I]t is simply unfair to spare the judges who give orders while punishing the officers who obey them," and prison officials would be subject to harassing litigation even with qualified immunity. *Valdez*, 878 F.2d at 1289. Moreover, the judicial process itself would suffer without absolute immunity. "[N]ot only may the threat of litigation impede an official's compliance with judicial orders, but 'fear of bringing down litigation on the [official] might color a court's judgment in some cases.'" *Mays*, 97 F.3d at 112 (quoting *Coverdell*, 834 F.2d at 765) (alteration in *Mays*). In addition, the expense of litigation, "the diversion of [officials'] attention from more socially productive obligations," and the "deterrence of qualified individuals from accepting public employment" all weigh against granting only qualified immunity. *Valdez*, 878 F.2d at 1288–89. Finally, absolute immunity does not leave prisoners who are incarcerated pursuant to illegal court orders without a remedy; they may directly appeal their convictions and/or seek habeas relief. *Id.* at 1289–90. We are cognizant that "absolute immunity always comes at a price." *Id*. at

1289. But "the public interest in the enforcement of court orders that is essential to the effective functioning of our judicial process far outweighs the benefits" of providing only qualified immunity. *Id.*

Our sister circuits have been careful to extend absolute immunity only to the *fact* of a prisoner's incarceration pursuant to a facially valid court order—*i.e.*, the prison official in question must act within his or her authority and strictly comply with the order. *See, e.g.*, *Patterson*, 999 F.2d at 1241 ("We note the limits of our holding. We simply conclude that a warden is absolutely immune from damages flowing from the fact of a prisoner's incarceration, when that incarceration occurs pursuant to a facially valid order of confinement." (emphasis omitted)); *Valdez*, 878 F.2d at 1286 ("[W]e hold that an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct *prescribed by that order*." (emphasis added)); *see also Moss*, 559 F.3d at 1163, 1167–68 ("[T]he judge issuing the disputed order must be immune from liability in his or her own right, the officials executing the order must act within the scope of their own jurisdiction, and the officials must only act as prescribed by the order in question."); *Hamilton*, 322 F.3d at 778, 783–86 (holding that questions of fact about the *manner* in which prison officials executed court orders may defeat absolute immunity).

This case fits within these limitations. There can be no question that the state court had the authority to issue Engebretson's sentencing order, that the defendants had the authority to enforce the order, or that the order was facially valid. *See* Mont. Code Ann. § 3-5-302(1)(a) (providing for original jurisdiction in the state trial courts over felony cases);

*id.* § 46-19-101(1) (providing for authorization to imprison or confine a defendant); *Sadoski*, 435 F.3d at 1079 (only a "judge who acts in the clear absence of all jurisdiction is not entitled to absolute immunity" (internal quotation marks omitted)); *Francis*, 216 F.2d at 585 ("facially valid" means that an order is "fair and regular on [its] face"). Moreover, the Engebretsons seek to hold Mahoney and Slaughter liable only for the conduct prescribed the state court's sentencing order (to subject Engebretson to probation following his release from prison); they do not make any allegations about how the defendants enforced the order.[7]  Thus, we need not decide whether allegations regarding a lack of authority to issue or enforce a facially valid court order, or a prison official's engaging in conduct not prescribed in such an order, might defeat that official's absolute immunity.

---

[7] The Engebretsons' amended complaint alleges that Mahoney and Slaughter had an independent duty to investigate the legality of the court's sentencing order before enforcing it.  They did not.  *See, e.g.*, *Stein*, 662 F.3d at 1119 ("[There is] no authority requiring prison officials to review sentencing orders independently to make sure the court got it right."); *Valdez*, 878 F.2d at 1289 (prison officials have no duty "to act as pseudo-appellate courts scrutinizing the orders of judges").

The complaint also alleges that Mahoney and Slaughter impermissibly restricted Jesse Engebretson's access to adequate legal reference materials and an inmate who might have helped him prepare his habeas petition.  But those allegations concern how the defendants allegedly ran the prison system, not whether they could enforce, or how they enforced, the state trial court's sentencing order.  As such, the allegations do not undermine Mahoney and Slaughter's absolute immunity from liability for simply and strictly enforcing that order.  Because the Engebretsons do not appeal the district court's failure to separately address these allegations, we do not address them further.

## CONCLUSION

Prison officials who simply enforce facially valid court orders "are performing functions necessary to the judicial process." *Miller*, 335 F.3d at 895–96. They must not be required to second-guess the courts if that process is to work fairly and efficiently. For this and the other reasons discussed above, we hold that prison officials, like the defendants in this case, who are charged with executing facially valid court orders enjoy absolute immunity from § 1983 liability for conduct prescribed by those orders.

**AFFIRMED.**