OPINION
O’SCANNLAIN, Circuit Judge:
We must deal with a case of mistaken identity arising out of the arrest and detention of a person named on a warrant not intended to describe him.
I
A
In July 1985, a Los Angeles Superior Court issued an arrest warrant for “Santiago Rivera.” On June 18, 1989, officers of the Montclair Police Department arrested Santiago Rivera, the plaintiff in this case, on the 1985 warrant. Fingerprint analysis revealed, however, that the Santiago Rivera who was arrested (“Rivera” or “the plaintiff’) was not the Santiago Rivera sought by the'warrant (“the subject of the *387 warrant”). Due to the risk of such mistaken identification recurring, the municipal court issued Rivera a judicial clearance form, which indicated that he was not the subject of the warrant.
On July 6, 1989, the court reissued the warrant but did not indicate that Rivera had been determined not to be its subject. The 1989 warrant described the subject as a Hispanic male with brown hair and brown eyes, 5'5" tall, and 180 pounds in weight. It included a date of birth matching Rivera’s and suggested that the subject did not have visible sears or tattoos.
On March 7, 2009, deputies from the San Bernardino Sheriffs Department stopped a car in which Rivera was traveling because it lacked a license plate. Using Rivera’s identification to run a routine warrant check, the deputies learned of the 1989 warrant for a “Santiago Rivera” with the same date of birth as the plaintiff. Rivera informed one of the deputies that he was not the warrant’s subject and had been issued a judicial clearance form after the erroneous 1989 arrest. When asked to produce that form, however, Rivera stated that he could not locate it.
Upon the deputies’ request, dispatch informed them that the warrant was active and provided the physical description from the warrant. Rivera’s driver’s license described him as 5'6" tall and as weighing 170 pounds. Believing Rivera to be the subject of the warrant, the deputies arrested him and took him to a detention center in San Bernardino, where his fingerprints were taken. San Bernardino officials transferred custody of the plaintiff to the Los Angeles Sheriffs Department two days later.
On the next morning, Rivera appeared in a Los Angeles Superior Court. Represented by a public defender, he did not tell the judge that he was not the subject of the warrant. At his next hearing, on March 24, 2009, Rivera argued that he was not the subject of the warrant. Because the court could not determine whether he was the subject of the warrant at that time, the court remanded Rivera to custody until April 7, 2009. As of April 7, 2009, the staff at the Los Angeles archives had still been unable to locate the documents that would contain the true subject’s fingerprints. The court again remanded Rivera to custody while the search for the proper documents continued. Two days later, the court released the plaintiff after it was determined that his fingerprints did not match the fingerprints of the true subject of the warrant.
To prevent mistaken identity in the future, the court issued the plaintiff a new judicial clearance form and added the plaintiffs photograph and fingerprints to the case file. The court also reissued the warrant with the true subject’s middle name, which differs from Rivera’s middle name.
B
In 2010, Rivera sued Los Angeles County, the Los Angeles County Sheriffs Department, San Bernardino County, and the San Bernardino County Sheriffs Department (“the Counties”), alleging violations of the Fourth and Fourteenth Amendments, violation of the Bane Act (California Civil Code § 52.1), and common law false imprisonment.
The district court granted the Counties’ motions for summary judgment on all of Rivera’s claims. The district court also denied his motion for reconsideration. Rivera timely appealed.
II
Rivera asserts that the district court erred in rejecting his claims that the Counties violated his Fourth and Four *388 teenth Amendment rights and that he can recover under 42 U.S.C. § 1983. His complaint alleged multiple constitutional violations, all of which the district court rejected: (1) failure to include biometric identifiers in the 1989 warrant, (2) unlawful arrest based on the 1989 warrant, and (3) illegal detainment after arrest.
A
Rivera first argues that Los Angeles County violated the Fourth Amendment by issuing the 1989 warrant without including a number corresponding to the true subject’s fingerprints.[1] The Fourth Amendment requires that any warrant “particularly describe ... the persons or things to be seized.” U.S. Const, amend. IV. Rivera’s argument amounts to a claim that the particularity requirement of the Fourth Amendment forbade Los Angeles County from issuing the warrant without fingerprint information.
1
In United States v. Espinosa, 827 F.2d 604 (9th Cir.1987), we evaluated a warrant under the particularity requirement. The subject of that warrant was described as “a male Latin, name unknown, referred to in affidavit as John Doe #1 ... approximately 35 years of age, 5'8"/5'10", approximately 200 pounds with black hair and black full beard.” Id. at 607. Despite the omission of the subject’s name, we held that such description sufficed under the Fourth Amendment. Id. at 611. A warrant containing the subject’s sex, race, hair color, as well as approximate height, weight, and age, satisfied the particularity requirement when it was accompanied by an affidavit listing places that the subject might be found. See id. It follows that a warrant containing the subject’s name, sex, race, hair color, eye color, and date of birth (rather than approximate age), in addition to approximate height and weight, is sufficiently particular, even if it does not list places that the subject might be found.
Confirming such analysis, other circuits have held that the inclusion of the subject’s name alone satisfies the particularity requirement. Rejecting the contention that the Fourth Amendment “impose[s] stringent requirements on how warrants must describe their intended subjects,” the Seventh Circuit has expressly noted that “an arrest warrant that correctly names the person to be arrested is [generally] considered constitutionally sufficient and need not contain any additional identifying information.” White v. Olig, 56 F.3d 817, 819 (7th Cir.1995); see also Powe v. City of Chicago, 664 F.2d 639, 645 (7th Cir.1981). The Fifth Circuit has also recognized the general rule that “the inclusion of the name of the person to be arrested on the arrest warrant constitutes a sufficient description to satisfy the fourth amendment requirement that the person to be seized be described with particularity.” Wanger v. Bonner, 621 F.2d 675, 682 (5th Cir.1980).
Thus, the 1989 warrant satisfied the particularity requirement because it contained both the subject’s name and a detailed physical description. That the plaintiff was erroneously arrested based on the warrant simply does not affect whether the warrant itself satisfied the particularity requirement.
*389 2
Moreover, municipalities, including counties and their sheriffs departments, can only be liable under § 1983 if an unconstitutional action “implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body’s officers.” Monell v. Dep’t of Soc. Servs. of City of New York, 486 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipal defendant is liable only “where the entity’s policies evince a ‘deliberate indifference’ to the constitutional right and are the ‘moving force behind the constitutional violation.’ ” Edgerly v. City and Cnty. of San Francisco, 599 F.3d 946, 960 (9th Cir.2010).
Even if the Fourth Amendment did require Los Angeles County to include more detailed information in the 1989 warrant in order to avoid the risk of repeated misidentification, Rivera would have to show that Los Angeles County had a policy or custom of failing to do so. This Rivera has not done. In fact, Los Angeles County had a policy of including an “exoneration” entry that identifies anyone mistakenly arrested on the warrant in the past. That officials apparently failed to implement that policy properly in this one instance is not sufficient for Los Angeles County to be liable. A single instance is not sufficient to show that a “practice is so widespread as to have the force of law.” Bd. of Cnty. Comm’rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
B
Rivera also argues that San Ber-nardino sheriffs deputies violated the Fourth Amendment when they arrested him. The deputies had probable cause to arrest the true subject of the warrant but mistakenly believed that Rivera was that person. In such cases, the question is whether the arresting officers had a good faith, reasonable belief that the arrestee was the subject of the warrant. See Hill v. California, 401 U.S. 797, 804, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) (“[Sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers’ mistake was understandable and the arrest a reasonable response to the situation facing them at the time.”).
On the undisputed factual record, the deputies were not unreasonable in believing that Rivera was the subject of the warrant at the time of arrest. The name and date of birth on the warrant matched Rivera’s exactly. The height and weight descriptors associated with the warrant, although not matching Rivera exactly, were within one inch and ten pounds of Rivera’s true size. See id. at 803-04 & n. 6, 91 S.Ct. 1106 (ruling that the officers reasonably concluded that the arrestee was the subject of the warrant despite a difference of two inches and ten pounds).
Rivera’s statement that he had been issued a judicial clearance form but could not locate it did not make the officers’ belief unreasonable. As the Supreme Court has expressly recognized, police are right to be wary when suspects claim mistaken identity. See id. at 803, 91 S.Ct. 1106 (“That person claimed he was Miller, not Hill. But aliases and false identifications are not uncommon.”).
The deputies’ belief that Rivera was the true subject of the warrant was not unreasonable under the Fourth Amendment.
C
Rivera also challenges his detainment after arrest under both the Fourth Amendment and the Fourteenth Amendment. Precedent demonstrates, however, that post-arrest incarceration is analyzed *390 under the Fourteenth Amendment alone. See Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (assuming arguendo the ability to state a due process claim for incarceration “pursuant to a valid warrant in the face of repeated protests of innocence”); Lee v. City of Los Angeles, 250 F.3d 668, 683-85 (9th Cir.2001) (separately analyzing the initial arrest under the Fourth Amendment and the postarrest incarceration under the Fourteenth Amendment).
1
In arguing that his incarceration violated the Fourteenth Amendment, Rivera relies chiefly on our decision in Fairley v. Luman, 281 F.3d 913 (9th Cir.2002). In Fairley, the plaintiff, John, had been detained for twelve days “without any procedural safeguard in place to verify the warrant he was detained on was his and in the face of his repeated protests of innocence.” Id. at 918. The Fairley court emphasized that John had been detained on a warrant, the subject of which was named “Joe” and differed from John in weight by 66 pounds, despite the defendants’ awareness that John had a twin brother. Id. at 915. John was never brought before a judge to assert his claim of mistaken identity. On such facts, we held “there was sufficient evidence for a reasonable jury to And that John suffered a constitutional deprivation under the Fourteenth Amendment.” Id. at 917.
Rivera’s reliance on Fairley is misplaced. Cases, like Fairley, holding that an incarceration based on mistaken identity violated the Due Process Clause are readily distinguishable from this case. They involved circumstances that might alert the defendants to a mistake of identity, withholding of a judicial forum for raising a claim of mistaken identity, or both.
2
The Supreme Court has suggested that incarceration based on mistaken identity might violate the Due Process Clause in some circumstances. In Baker v. McCollan, 443 U.S. 137, 140-41, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), a warrant was issued for “Linnie McCollan” because the true subject of the warrant, Leonard McCollan, used false identification. Police in Dallas later arrested Linnie and transferred him to the Potter County Sheriffs Department after four days. Potter County officials released Linnie three days later when a review of a file photograph of the true subject revealed the mistake. Id. at 141, 99 S.Ct. 2689. Linnie challenged his three-day detention in Potter County under the Fourteenth Amendment and § 1983. Id. at 143-44, 99 S.Ct. 2689. The Supreme Court ruled:
We may even assume, arguendo, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of “liberty ... without due process of law.” But we are quite certain that a detention of three days over a New Year’s weekend does not and could not amount to such a deprivation.
Id. at 145, 99 S.Ct. 2689. In Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir.2001), which relied on Baker, we confirmed that such a violation could occur and explained that a plaintiffs burden is to show that “it was or should have been known that [he] was entitled to release.” Lee, 250 F.3d at 683 (quoting Cannon v. Macon Cnty., 1 F.3d 1558, 1563 (11th Cir.1993)).
3
Cases holding that an incarceration violated the Due Process Clause be *391 cause defendants should have known the plaintiff was entitled to release fit at least one of two categories: (1) the circumstances indicated to the defendants that further investigation was warranted, or (2) the defendants denied the plaintiff access to the courts for an extended period of time.
But the “further investigation” cases have involved significant differences between the arrestee and the true suspect. In Fairley, for example, the plaintiff and the true subject of the warrant not only-had different first names but also differed in weight by 66 pounds. 281 F.3d at 915. In Cannon v. Macon County, 1 F.3d 1558, 1563 (11th Cir.1993), the arrestee’s “driver’s license differed significantly from the description provided for” the suspect and that the arrestee’s “physical makeup did not match the physical description for” the suspect.
And the “denied access” cases have involved significant periods of deprivation. For instance, in Fairley, the plaintiff was held for twelve days without a hearing or court appearance. There, we held that the procedures employed violated the Due Process Clause. Fairley, 281 F.3d at 915, 918. In Oviatt v. Pearce, 954 F.2d 1470, 1473 (9th Cir.1992), the “plaintiff spent 114 days in jail "without an arraignment, a bail hearing, or a trial.” Again, we ruled that the procedures that permitted such a delay denied the plaintiff liberty without due process of law. Id. at 1477.
4
Rivera has not presented any evidence that the Counties knew that Rivera was not the true subject of the warrant. Nor do the circumstances of this case suggest that further investigation into Rivera’s identity was required. Indeed, it appears that the San Bernardino deputies reasonably believed that Rivera was the true subject of the warrant from the time they arrested him. The same considerations that made the arrest reasonable bear on whether the circumstances of the detention should have warned the Counties that Rivera might not be the true subject of the warrant. In this case, the warrant information gave no reason to suspect that Rivera was not the true subject of the warrant since the name and date of birth matched exactly while the physical descriptions were quite similar.[2]
Nor did Rivera’s two brief claims of mistaken identity upon arrival at the Los Angeles facility indicate that the Los An-geles defendants should have investigated more thoroughly.[3] Claims of innocence are common in jails; a jailor need not independently investigate all uncorroborated claims of innocence if the suspect will soon have the opportunity to assert his claims in front of a judge.[4] Unsupported *392 claims of mistaken identity, by themselves, do not trigger a duty to investigate further.
Even assuming Rivera’s two casual mentions of mistaken identity suffice to make his incarceration “in the face of repeated protests of innocence,” the Due Process Clause was not violated unless Rivera was held for a long enough period of time without adequate procedures. Baker, 443 U.S. at 145, 99 S.Ct. 2689 (assuming a violation could occur “after the lapse of a certain amount of time” and “depending on what procedures the State affords defendants following arrest and prior to actual trial”). Rivera was taken before a judge the very next day, a significant procedural protection. It is unclear why Rivera did not assert his claim of mistaken identity at the March 10 court hearing, but the failure to take advantage of a procedural protection does not disprove its availability.
Thereafter, he was no longer held simply on the warrant; he was “held in custody pursuant to a court order.” If a suspect is held according to court order, county officials are not required to investigate whether that court order is proper. See Hernandez v. Sheahan, 455 F.3d 772, 776 (7th Cir.2006) (upholding a policy that “[i]gnore[s] all claims of misidentification” after a judge commits a suspect to the sheriffs custody); Lumbermens Mut. Cas. Co. v. Rhodes, 403 F.2d 2, 7 (10th Cir.1968) (“Certainly a jailer should not be expected to go behind a court order of commitment to determine whether a person presented for safekeeping has been convicted as a result of some denial of his constitutional rights.”).[5] This fact removes this case from the realm envisioned by Baker. See Baker, 443 U.S. at 145, 99 S.Ct. 2689 (discussing “detention pursuant to a valid warrant”). It also distinguishes this case from those involving prolonged incarceration without access to judicial process. See Fairley, 281 F.3d at 915; Oviatt, 954 F.2d at 1473.
For the foregoing reasons, Rivera’s detention did not violate the Due Process Clause of the Fourteenth Amendment.[6] *393 The district court, therefore, was correct to grant summary judgment for the defendants on this claim.
Ill
Rivera has asserted claims under California law as well. First, he claims that the defendants committed the common law tort of false imprisonment. Second, he asserts that the defendants are liable under California Civil Code § 52.1(b), the Bane Act, which is a cause of action for violations of constitutional and statutory rights. Under California law, the Counties, as public entities, are liable for the actions of their employees. Cal. Gov.Code § 815.2(a). To the extent their employees would be immune from liability, however, the Counties are also immune. Cal. Gov.Code § 815.2(b).
California law provides two types of immunity relevant to this case. First, an officer is not liable for “an arrest pursuant to a warrant of arrest regular upon its face if the peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant.” Cal. Civil Code § 43.55(a). Second, an officer is not liable “for false arrest or false imprisonment arising out of any arrest” that “was lawful, or [that] the peace officer, at the time of the arrest, had reasonable cause to believe ... was lawful.” CaLPenal Code § 847(b)(1).
In Lopez v. City of Oxnard, 207 Cal.App.3d 1, 4, 254 Cal.Rptr. 556 (1989), plaintiff Lopez had been arrested multiple times on a warrant for which he was not the true subject because his name, date of birth, address, and physical description matched those on the warrant. After his first arrest, however, the plaintiff obtained a “disposition sheet” from the court, which explained that the plaintiff was not the true subject of the warrant. Despite bringing this disposition sheet to the officers’ attention, the plaintiff was detained twice more, once for three days and once for three hours. Id. at 4-5, 254 Cal.Rptr. 556. The court held that the arresting officer was immune from liability because “there is no factual question whether the officer had a reasonable belief that Lopez was the person named in the warrant.” Id. at 9, 254 Cal.Rptr. 556. The court also held that the sheriffs department that jailed the plaintiff was not liable, despite failing to consider the disposition sheet, because jail personnel “are entitled to rely on process and orders apparently valid on their face.” Id.
Because the employees relevant to this case would be able to invoke statutory immunities to avoid liability, the Counties can as well. Therefore, the district court’s grant of summary judgment based on statutory immunities was correct.
IV
For the foregoing reasons, the district court properly granted the defendants’ motions for summary judgment.
AFFIRMED.

. Rivera describes his claim as challenging the issuance of the warrant rather than the sufficiency of the warrant to permit arrest. We assume, arguendo, that Rivera may state a claim under § 1983 against Los Angeles County for the issuance of an insufficiently particular warrant even though the warrant was issued by a judge.

. That Rivera's address on his driver’s license in 2009 did not match the address on the 1989 warrant would not give a reasonable officer pause in identifying Rivera as the subject of the warrant. It is certainly common for a person to have a different address than he did twenty years ago.

. After his initial court appearance, Rivera failed to complain to members of the Los Angeles County Sheriff's Department that he was not the true subject of the warrant. That Rivera asserted to his public defender (and possibly the prosecutor) that he was not the subject of the warrant is irrelevant. Public defenders do not act under color of state law for the purpose of § 1983 "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.” Polk Cnty. v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981).

.The dissent would hold that a detainee’s uncorroborated claim of mistaken identity creates a constitutional obligation for the jail- or to “check readily available, exculpatory information.” Dissent at 396. Of course, a great deal of information is "readily avail *392 able/’ and a jailor has no way of knowing which evidence, if any, will be exculpatory before starting the investigation. Such a requirement could be quite burdensome in the aggregate. Because there is no principled distinction between claims of mistaken identity and other claims of innocence, cf. Baker, 443 U.S. at 145-46, 99 S.Ct. 2689 (equating claims of mistaken identity with other claims of innocence); but see Dissent at 395 n. 2, such reasoning would presumably force jailors to investigate non-mistaken identity claims of innocence, which would increase the costs of the rule even more. Contra Dissent at 395-96 (claiming “no great burden” would be imposed).

. The dissent argues that our decision in Lee compels the conclusion that "a detainee may still have a due process claim against his jailer despite a prompt court hearing that results in his remand to custody.” Dissent at 395. Lee permitted a suit based on the pre-hearing detention; it did not purport to impose liability for the post-hearing detention. In the section on which the dissent relies, Lee merely explained why the one-day detention at issue in that case could violate the Due Process Clause when the three-day detention at issue in Baker did not. See Lee, 250 F.3d at 684-85 (distinguishing Baker, for due process purposes, because it involved incarceration on “a facially valid warrant” rather than detention of a mentally incapacitated person in the absence of probable cause). Based on a misreading of Lee and concerns about “unsound policy,” Dissent at 395, the dissent urges us to create a circuit split. This we decline to do.

. In reaching a contrary conclusion, the dissent relies on Russo v. City of Bridgeport. Dissent at 396 (citing 479 F.3d 196 (2d Cir.2007)). That case, however, ruled that the detention at issue violated the Fourth Amendment, not the Due Process Clause. See Russo, 479 F.3d at 208 (“[W]e now conclude ... that the right should instead by analyzed under the Fourth Amendment.”). The dissent, how *393 ever, agrees that the district court was correct to grant summary judgment on Rivera's Fourth Amendment Claims. Dissent at 393-94 ("I agree with the majority that Rivera’s Fourth Amendment claims ... must fail....”).