**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIO ALBERTO GARCIA, individually and as class representative, *Plaintiff-Appellee*, <br><br> v. <br><br> COUNTY OF RIVERSIDE, *Defendant*, <br><br> and <br><br> COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; LEE BACA, in his personal and individual capacity, *Defendants-Appellants*. | No. 13-56857 <br><br> D.C. No. 5:13-cv-00616-JGB-SP <br><br><br> ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted
December 11, 2015—Pasadena, California

Filed February 3, 2016
Amended April 8, 2016

Before: Ronald M. Gould and Marsha S. Berzon, Circuit
Judges, and Jack Zouhary,[*] District Judge.

Order;
Opinion by Judge Gould

## SUMMARY[**]

### Civil Rights

The panel amended its prior opinion, published at
811 F.3d 1220, and denied the petition for rehearing and
rehearing en banc. In the amended opinion the panel
affirmed the district court's denial of qualified immunity,
absolute (quasi-judicial) immunity, and immunity under two
California statutes in an action brought by Mario A. Garcia
pursuant to 42 U.S.C. § 1983 and state law alleging that he
was wrongfully incarcerated by the Los Angeles County
Sheriff's Department based on the misapplication of a felony
warrant issued in 1994 for Mario L. Garcia, who has the same
date of birth as plaintiff.

The panel first held that former Los Angeles Sheriff Lee
Baca in his individual capacity may appeal the denial of
absolute quasi-judicial immunity for the same reasons he
may appeal denial of qualified immunity in his individual

---

[*] The Honorable Jack Zouhary, District Judge for the U.S. District Court
for the Northern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

capacity. The panel held that Los Angeles County and the Los Angeles Sheriff's Department could not appeal denial of quasi-judicial immunity because they could not assert an absolute immunity in the first place. The panel held that it had jurisdiction over defendants' appeals from denial of state-law immunity because the district court's denial determined rights collateral to those asserted in the action, and like the denial of qualified immunity, the district court's decision was effectively unreviewable on appeal from a final judgment.

The panel held that plaintiff had sufficiently pleaded a Fourteenth Amendment violation arising from law enforcement's failure to investigate his claim of mistaken identity after he was arrested. The panel stated that an obvious physical discrepancy between a warrant subject and a booked individual, such as a nine-inch difference in height, accompanied by a detainee's complaints of misidentification, should prompt officers to engage in readily available and resource-efficient identity checks, such as a fingerprint comparison, to ensure that they are not detaining the wrong person. The panel further held that Sheriff Baca was not entitled to qualified immunity because at the time of plaintiff's November 2012 incarceration, the standards for determining whether alleged police conduct violated the Fourteenth Amendment were clearly established.

The panel held that Sheriff Baca was not entitled to absolute, quasi-judicial immunity because plaintiff challenged not just the fact of his incarceration but also the lack of procedures to prevent the misidentification. Finally, the panel rejected defendants' contention that they were immune from plaintiff's state-law claims because of immunities provided in California Penal Code § 847 and California Civil Code § 43.55. The panel held that those

statutes do not shield defendants from liability under state law because their application is premised on reasonable beliefs, and the crux of plaintiff's claim is that it was unreasonable for officers to believe that he was the person who was described in the warrant without greater investigation.

---

## COUNSEL

Scott E. Caron (argued), Paul B. Beach, and Michael D. Allen, Lawrence Beach Allen & Choi, P.C., Glendale, California, for Defendants-Appellants.

Donald W. Cook, Los Angeles, California, for Plaintiff-Appellee.

---

## ORDER

The opinion filed on February 3, 2016, and published at 811 F.3d 1220, is hereby amended as follows:

1. Slip op. at 18–19, delete "These statutes do not shield Defendants from liability under state law because Plaintiff is not asserting claims "arising out of an[] arrest" or against the *arresting* officer. *See* Cal. Pen. Code § 847(b). According to these statutes' text, they apply only to arresting officers. Moreover, these statutory immunities are premised on reasonable beliefs, and the crux of Plaintiff's claim is that it was unreasonable for officers to believe that he was the person who was described in the warrant without greater investigation." Replace deleted text with "These statutes do not shield Defendants from liability under state law because their application is premised on reasonable beliefs, and the

crux of Plaintiff's claim is that it was unreasonable for officers to believe that he was the person who was described in the warrant without greater investigation."

With this amendment, the panel has voted to deny the petition for rehearing. Judge Gould and Judge Berzon have voted to deny the petition for rehearing en banc, and Judge Zouhary has so recommended. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petitions for rehearing and rehearing en banc are **DENIED**. No future petitions for rehearing or rehearing en banc will be entertained.

---

**OPINION**

GOULD, Circuit Judge:

Los Angeles County, LA County Sheriff's Department (LASD), and former LA Sheriff Lee Baca appeal the district court's denial of qualified immunity, absolute (quasi-judicial) immunity, and immunity under two California statutes in this suit by Plaintiff Mario A. Garcia. Plaintiff asserted claims under 42 U.S.C. § 1983, the California Constitution, and state tort law, alleging that he was wrongfully incarcerated by LASD based on the misapplication of a felony warrant issued in 1994 for Mario L. Garcia, who has the same date of birth as Plaintiff. For the reasons that follow, we affirm.

# I

Plaintiff was arrested for driving under the influence in Riverside County, California, on November 26, 2012. He was booked in a Riverside County jail. A booked individual is electronically fingerprinted through a system called "Livescan." The Livescan image is then sent to the California Department of Justice (CDOJ), which responds in one of two ways. If the arrestee's fingerprints are already on file, the subject's criminal identification and information (CII) number and criminal history are sent to the arresting agency. If the arrestee's fingerprints are not on file, a new CII number is assigned. This number is linked to fingerprints, name, birth date, address, and other identifiers such as Social Security number. Los Angeles County agencies also assign a fingerprint-based "LA Main" number to their warrants. CII and LA Main numbers are often used to generate an arrestee's criminal history, which can include the subject's full name, birth date, residential addresses, and Social Security and driver's license numbers. The numbers are also searched in a warrant database, such as the LA-based Countywide Warrant System (CWS) or the statewide Wanted Persons System (WPS), to determine whether the arrested individual has an outstanding warrant.

When Riverside County Sheriff's Department (RCSD) officers searched for Plaintiff "Mario Garcia" in WPS, they found a felony warrant for Mario L. Garcia issued by the Los Angeles Superior Court in 1994. The warrant described Mario L. Garcia using only his first and last name, date of birth, height, and weight. The first and last name and birth date matched Plaintiff's own. But Plaintiff alleges that when RCSD contacted LASD personnel to report the "hit," LASD did not forward information on Mario L. Garcia's biometric

identifiers, middle name, or criminal record, all of which differed from Plaintiff's. RCSD matched Plaintiff to the warrant and told him that he would be detained, despite Plaintiff's protests that he was not Mario L. Garcia and that he had been mistakenly detained before based on the same warrant.

The next day Plaintiff was transferred to an LA County jail, where he alleges that he repeated his complaints to LASD officers. Plaintiff contends that LASD knew or should have known that he was not Mario L. Garcia for several reasons: (1) their middle names do not match; (2) their height and weight differ considerably (Mario L. Garcia is listed as 5'1", 130 lbs. Plaintiff is 5'10", 170 lbs.); (3) Plaintiff's biometric identifiers, including fingerprints and CII number, did not match the subject's; and (4) Plaintiff's criminal history, which was linked in the system to his fingerprints, did not match the subject's. Plaintiff contends that it is the policy of LASD to ignore CII numbers for identification purposes, to ignore prisoners' complaints of misidentification, and to accept an outside agency's determination that an arrestee is the subject of a warrant rather than conduct an independent identity check upon booking in LA County.

Plaintiff sued under 42 U.S.C. § 1983, alleging violations of the Fourth Amendment and Fourteenth Amendment by LASD, LA County, Baca, and several Doe defendants. He also brought state-law claims against LASD and LA County.[1] The district court denied Defendants' motion to dismiss Plaintiff's section 1983 claim of wrongful incarceration in

---

[1] Plaintiff settled his claims against Riverside County and the Riverside County Sheriff's Department, which are no longer parties to this action.

violation of the Fourteenth Amendment Due Process Clause, concluding that Plaintiff had alleged detention beyond the point when LASD officers should have known to release him. The district court denied Baca's request for qualified immunity and Defendants' request for quasi-judicial immunity and state-law immunity. Defendants appealed via 28 U.S.C. § 1291.

## II

Plaintiff contests jurisdiction over Defendants' appeals from denial of immunity. He concedes that we have jurisdiction over Baca's appeal of denial of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 530, 526 (1985). Baca may only assert qualified immunity in his individual capacity, not in his official capacity. *See Eng v. Cooley*, 552 F.3d 1062, 1064 n.1 (9th Cir. 2009); *Owen v. City of Independence, Mo.*, 445 U.S. 622, 638 (1980)). However, we hold that Baca in his individual capacity may appeal denial of absolute quasi-judicial immunity, for the same reasons he may appeal denial of qualified immunity in his individual capacity. *See Mitchell*, 472 U.S. at 526–27 (noting that absolute immunity, like qualified immunity, is immediately appealable under the collateral order doctrine).

LA County and LASD may not appeal denial of quasi-judicial immunity, because they may not assert an absolute immunity in the first place. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 701 (1978) (holding that "municipal bodies sued under § 1983 cannot be entitled to an absolute immunity, lest our decision that such bodies are subject to suit under § 1983 'be drained of meaning'") (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 248 (1974)). However, our cases do not foreclose Defendants' appeal of

the district court's denial of state-law statutory immunity. We have jurisdiction over Defendants' appeals from denial of state-law immunity because the district court's denial determined rights collateral to those asserted in the action, and like the denial of qualified immunity, the district court's decision is effectively unreviewable on appeal from a final judgment. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); *Mitchell*, 472 U.S. at 527. In sum, LA County and LASD may only appeal denial of state-law statutory immunity. *See Owen*, 445 U.S. 622, 650 (1980); *Monell*, 436 U.S. at 701. Baca, in his individual capacity, may appeal denial of qualified immunity and of quasi-judicial immunity. *See Mitchell*, 472 U.S. at 528. Baca did not assert state-law immunity because Plaintiff's state-law claims were against LA County and LASD only.

## III

Defendants contend that Baca is entitled to qualified immunity as to the alleged violation of Plaintiff's due process rights. Qualified immunity applies unless the facts alleged make out (1) a violation of a constitutional right, which (2) was "clearly established" at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Baca asserts that both stages of the *Pearson* analysis entitle him to qualified immunity.

The parties disagree whether Plaintiff has alleged a Fourteenth Amendment violation. Defendants argue that *Baker v. McCollan*, 443 U.S. 137 (1979), forecloses Plaintiff's claim. That is not so.

In *Baker*, a warrant was issued under the plaintiff's name because the plaintiff's brother, the warrant subject, had

obtained a copy of the plaintiff's driver's license and had replaced the plaintiff's photo with his own. When the plaintiff was stopped for running a red light, he was taken into custody on the warrant intended for his brother. *Id.* at 141. He was released several days later after officials compared his appearance to a file photograph of his brother. *Id.* The Supreme Court held that although the plaintiff had been falsely imprisoned, his detention was not a constitutional violation because, without more, "a person arrested pursuant to a [valid] warrant . . . is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." *Id.* at 143–45.

While the facts in *Baker* did not amount to a due process violation, *Baker* did not create a categorical bar on due process claims arising from law enforcement's failure to investigate an arrestee's claim of mistaken identity. To the contrary, as we have noted, *Baker* "suggested that incarceration based on mistaken identity *might* violate the Due Process Clause in some circumstances." *Rivera v. County of Los Angeles*, 745 F.3d 384, 390 (9th Cir. 2014) (emphasis added). And we have found such violations in several cases. *See, e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 684 (9th Cir. 2001). *Lee* held that a group of plaintiffs had alleged a Fourteenth Amendment violation based on city officials' "conscious failure to train their employees in the procedures necessary to avoid" mistaken misidentifications. *Id.* According to *Lee*, a plaintiff's burden is to show that defendants did not give him "minimum due process appropriate to the circumstances to ensure that his liberty was not arbitrarily abrogated." *Id.* (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1475 (9th Cir. 1992)) (internal alterations omitted). Our cases holding that a mistaken incarceration

violated the Due Process Clause fit into at least one of two categories. Either "(1) the circumstances indicated to the defendants that further investigation was warranted, or (2) the defendants denied the plaintiff access to the courts for an extended period of time." *Rivera*, 745 F.3d at 391. Because Plaintiff does not allege that he was denied access to the courts, he must allege that "further investigation was warranted" based on the facts of his detention. *Id*.

As observed in *Rivera*, the "further investigation" cases have involved significant differences between the arrestee and the true warrant subject. *Id*. For instance, in *Fairley v. Luman*, 281 F.3d 913, 915 (9th Cir. 2002) (per curiam), the plaintiff and the true warrant subject (who were twins) had different first names and differed in weight by 66 pounds. The booking sergeant knew that the plaintiff had a twin brother, but approved the plaintiff's booking based on a similarity in physical descriptions alone, without performing a readily available fingerprint comparison. *Id.* We concluded that the plaintiff had pleaded a due process violation in light of his detention "without any procedural safeguard in place to verify the warrant he was detained on was his and in the face of his repeated protests of innocence." *Id.* at 918. In light of the plaintiff's liberty interest, and the "minimum burden" to the city of instituting procedures to verify identity, the city's procedures violated the Due Process Clause. *Id.*

More recently, in *Rivera*, plaintiff Santiago Rivera was misidentified and detained on a warrant meant for a different person with the same name, same date of birth, and similar physical characteristics (within one inch in height and ten pounds in weight). *Rivera*, 745 F.3d at 387. Holding that Rivera's detention did not violate the Due Process Clause, we distinguished *Fairley*, which involved circumstances that

could alert the defendants to a misidentification, such as differences in first name and weight. *Id.* at 390–91. Rivera, by contrast, had not presented any evidence that the defendants knew he was not the true subject of the warrant, or that further investigation into his identity was called for based on what defendants did know. *Id.* at 391. Instead, as in *Baker*, deputies reasonably concluded that Rivera was the true warrant subject. *Id.*; *see also Baker*, 443 U.S. at 141.

Finally, in *Gant v. County of Los Angeles*, 772 F.3d 608, 622–23 (9th Cir. 2014), we held that plaintiff Jose Ventura, who was detained based on a warrant meant for another man with the same name, had plausibly alleged that one of the defendants, LA County, violated his due process rights because "they should have known that he was not the subject of the 'Jose Ventura' warrant." The plaintiff and the warrant subject differed by seven inches in height and 120 pounds in weight. *Id.* at 618. The district court dismissed the claim against LA County, finding that the plaintiff had not sufficiently complained to officers that he was wrongfully detained. We reversed, holding that the conflicting evidence about whether the plaintiff had complained that he was the wrong person raised a genuine issue of material fact. *Id.* at 623.

Whether LASD had to investigate in the face of Plaintiff's protests and complaints that he wasn't the person described in the outstanding warrant is an important question. No person deserves to be incarcerated without good reason, and incarceration on a warrant without a reasonable investigation of identity, when the circumstances demand it, is subject to review under the Due Process Clause. The issue is whether LASD's treatment of Plaintiff's contention that he was not the warrant subject was so superficial, under the

circumstances, that it ignored a duty to investigate and offended due process.

Defendants contend that according to *Baker*, LASD had no duty to investigate Garcia's identity, even though he complained that he was not the subject of the warrant, even though the physical description in the warrant was far off from Garcia's, and even if LASD had or could have easily obtained information that would have exonerated him. Garcia's allegations are, however, significantly different than those in *Baker*. The detention in *Baker* followed an arrest pursuant to a valid warrant, where the warrant exactly matched the plaintiff's identifying information because the suspect had obtained a copy of the plaintiff's driver's license. Because the warrant did not contain the suspect's photograph, the arresting officers "understandably concluded that they had their man." *Baker*, 443 U.S. at 141. This is not true for Garcia. Although Garcia's arrest for driving under the influence was valid, the warrant on which he was later held matched only his first and last name and date of birth. Garcia is nine inches taller and forty pounds heavier than the warrant subject. Even a cursory comparison of Garcia to the warrant subject should have led officers to question whether the person described in the warrant was Garcia. Information that raised questions about Garcia's identity should have prompted the LASD to investigate more deliberately.

Furthermore, in denying the plaintiff's constitutional claim in *Baker*, the Supreme Court expressed reluctance to impose the expense of an "error-free investigation" of claims of mistaken identity on sheriff's departments nationwide. *Id*. at 146. But those concerns are *de minimis* here. Plaintiff has alleged that LASD knew that his fingerprint-matched CII number did not match the warrant subject's, and within a few

seconds could have used his CII number to check his criminal history, which also did not match the warrant subject's. A simple procedure to check individuals' basic information upon transfer and booking in a county jail, to certify it matches the warrant subject, is not the type of costly "error-free investigation" the Supreme Court was reluctant to impose in *Baker*. *Id*.

Similarly, like the plaintiffs in *Lee*, Garcia has alleged Defendants' "failure to train their employees in the procedures necessary to avoid" misidentifications. *Lee*, 250 F.3d at 684. Garcia alleges that it is the policy of LASD to ignore CII numbers for identification purposes and to ignore a prisoner's complaints of misidentification, thereby denying him "minimum due process appropriate to the circumstances to ensure that his liberty was not arbitrarily abrogated." *Id.* (internal quotation marks and alterations omitted). And like the plaintiff in *Fairley*, Garcia has alleged that his jailers had reason to know that he had been mistaken for the true warrant subject, and that Defendants' deficient procedures are to blame for the misidentification. *See Fairley*, 281 F.3d at 918. As in *Fairley*, Garcia's allegations highlight the procedures Defendants could have used, with "minimum burden," to distinguish him from the warrant subject. *Id*.

*Rivera* does not foreclose Plaintiff's Fourteenth Amendment claim either. Here, even limiting officers to the information on the warrant, they could not have "understandably concluded that they had their man." *Baker*, 443 U.S. at 141. The extreme difference in height of nine inches between the warrant subject and Garcia, which could not be explained as a normal growth process for an adult, was a red flag, as was, to a lesser degree, the forty pound weight

differential.    These differences, coupled with Garcia's protests, should have "indicated to the defendants that further investigation was warranted." *Rivera*, 745 F.3d at 391.

*Rivera*, of course, held that officers do not have a duty to independently investigate "all uncorroborated claims of innocence" if the suspect will soon have an opportunity to appear in court. *Id.* at 384.  However, an obvious physical discrepancy between a warrant subject and a booked individual, such as a nine-inch difference in height, accompanied by a detainee's complaints of misidentification, should prompt officers to engage in readily available and resource-efficient identity checks, such as a fingerprint comparison, to ensure that they are not detaining the wrong person.  Here Plaintiff's claim of mistaken identity was not uncorroborated, because of the height and weight differences, and he also alleges that officers already had all the information they needed to differentiate him from the warrant subject.  *See Rivera*, 745 F.3d at 391 n.4.

This case also differs from *Rivera* because there, it took several days for LA County staff to locate the true subject's fingerprints; when they found them and performed a comparison, the court released the plaintiff.  *Rivera*, 745 F.3d at 387.  Here, Plaintiff alleges that LA County had the warrant subject's fingerprints and CII number on file during the entirety of his detention, and neither forwarded that information to arresting officers in Riverside County nor compared it to Plaintiff's identifying information when they booked him.**[2]**

---

**[2]** Although Defendants contend that "it is clear from the allegations of the complaint that LASD personnel could not have had actual knowledge of the warrant subject's CII and LA Main numbers," the Second Amended

While Defendants contend that differences in height and weight are not sufficient, by themselves, to trigger a duty to investigate a detainee's identity, the authority cited in their brief involves circumstances different than those alleged here. For example, in *Johnson v. Miller*, 680 F.2d 39, 40 (7th Cir. 1982), the plaintiff was arrested on a warrant matching her name and year of birth, but not her height, day and month of birth, or race. The Seventh Circuit held that there was no constitutional violation, despite the discrepancies in information. *Id.* at 41. We have cited *Johnson* for the proposition that "arresting officers do not have a constitutional obligation to review warrants for discrepancies between the description in the warrant and the appearance of the person to be arrested." *Arnsberg v. United States*, 757 F.2d 971, 981 (9th Cir. 1985). That may make some sense when dealing with arresting officers in the field who cannot always pause to make inquiries on a warrant. But Garcia was not initially arrested pursuant to a warrant. Riverside County officers booked him on the Mario L. Garcia warrant after he had already been arrested and booked for driving under the influence in Riverside County.

Defendants contend that in the face of many similarities, one material difference will not make an arrest unreasonable, citing the Eleventh Circuit decision *Rodriguez v. Farrell*, 280 F.3d 1341, 1346 (11th Cir. 2002). That principle might apply where no single material difference would lead reasonable law enforcement personnel to question the identification. But here, the nine-inch difference in height, even if standing alone, is so inexplicable except by misidentification that the booking officers clearly had a duty

---

Complaint alleges that LASD had actual knowledge of the true warrant subject's CII number, LA Main number, and full name.

to make readily available inquiries. And those further inquiries would have shown more material differences, such as different arrest record, middle initial, and home address. Moreover, like *Johnson*, *Rodriguez* involved claims against arresting officers in the field, who are under different demands than booking officers. *Id.* at 1343.

## IV

Because we hold that Garcia has sufficiently pleaded a Fourteenth Amendment violation, whether Baca is entitled to qualified immunity depends on whether the right that Garcia asserts was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. Defendants contend that until *Rivera*, our cases have applied *Baker* unevenly and inconsistently. However, the holdings of *Lee*, *Fairley*, *Rivera*, and *Gant* are explained by differences in the facts, not by inconsistent statements of law. *Rivera*, decided after the district court's second order, summarizes existing law: officers violate the Fourteenth Amendment if they wrongly detain a person where "the circumstances indicated to [them] that further investigation was warranted." *Rivera*, 745 F.3d at 391.

*Gant* also reinforces this statement of law as having been clearly established at the time Garcia was arrested and held on the warrant. We affirmed summary judgment for the San Bernardino County defendants because plaintiff Jose Ventura had not raised a material issue of fact as to whether those defendants had a policy of not requiring fingerprint comparisons, and affirmed summary judgment for LA County on plaintiff Kelvin Gant's Fourteenth Amendment claims because Gant had not called his case of mistaken identity to the defendants' attention and was given a prompt hearing.

*Gant*, 772 F.3d at 620–23. But we reversed summary judgment on Ventura's claims against LA County, concluding that a factual issue existed whether Ventura complained to the LA defendants that they had the wrong person. *Id*. *Rivera* and *Gant* apply precedent from the Supreme Court and our circuit to different allegations by different plaintiffs. They do not make new law. In sum, at the time of Plaintiff's November 2012 incarceration, the standards for determining whether alleged police conduct violates the Fourteenth Amendment were clearly established. Baca is not entitled to qualified immunity.

## V

Defendants also collectively assert that they are entitled to absolute, quasi-judicial immunity. As explained above, LA County and LASD cannot assert quasi-judicial immunity at all. *Monell*, 436 U.S. at 701. This appeal of the district court's denial of quasi-judicial immunity applies only to Baca.

Baca claims that because there was lawful authority for Plaintiff's detention, by way of a "presumptively reasonable" seizure, he should not be penalized for any constitutional violation that may have occurred. Law enforcement officers, Baca asserts, have no duty to "go behind [a] judicial order . . . to inquire into the validity of the procedure leading up to its issuance." *Francis v. Lyman*, 216 F.2d 583, 585 (1st Cir. 1954). But Plaintiff is not challenging the validity of the warrant itself, or its issuance in 1994; he is claiming that it was wrongfully applied to him. Taking simple, readily available steps to verify that they had booked the man they sought, in the presence of marked physical differences and Plaintiff's protestations of misidentification, does not require

officers to "inquire into the validity" of a warrant or its issuance. Rather, the question is whether the LASD procedures were reasonably calculated to determine that an arrestee was the person described in the outstanding warrant.

It is true that "prison officials charged with executing facially valid court orders enjoy absolute immunity from section 1983 liability for conduct prescribed by those orders." *Engebretson v. Mahoney*, 724 F.3d 1034, 1039 (9th Cir. 2013). However, absolute immunity applies "only to the *fact* of a prisoner's incarceration pursuant to a facially valid court order—*i.e.*, the prison official in question must act within his or her authority and strictly comply with the order." *Id.* at 1041 (emphasis in original). Here, according to Plaintiff's allegations, Baca did not strictly comply with the order, as it was applied to the wrong person, and Plaintiff challenged not just the fact of his incarceration, but also the lack of procedures to prevent the misidentification. Because the facts Plaintiff has alleged go beyond the limits of quasi-judicial immunity, this immunity does not apply to Baca.

Finally, LA County and LASD assert that they are immune from Plaintiff's state-law claims (wrongful incarceration pursuant to Cal. Const., Art. I § 13, and false imprisonment) because of immunities provided in California Penal Code § 847 and California Civil Code § 43.55. The first provision, section 847, prohibits causes of action against any peace officer, acting within his authority, "for false arrest or false imprisonment arising out of any arrest," if the officer at least "had reasonable cause to believe the arrest was lawful." Cal. Penal Code § 847(b). The second, section 43.55, precludes causes of action against "any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face," if the officer "acts without malice and in the

reasonable belief that the person arrested is the one referred to in the warrant." Cal. Civ. Code § 43.55(a). These statutes do not shield Defendants from liability under state law because their application is premised on reasonable beliefs, and the crux of Plaintiff's claim is that it was unreasonable for officers to believe that he was the person who was described in the warrant without greater investigation. Plaintiff has not challenged his arrest for driving under the influence; rather, he challenges Defendants' decision to detain him based on a warrant for another person.

Whether the officers who subjected Plaintiff to imprisonment on the warrant acted reasonably is a question that must be determined in this litigation assessing the boundaries of due process. There is at this time no applicable state or federal law immunity.

**AFFIRMED**.