**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2000
_____

WILLIAM CURTIS,
                    Appellant

v.

JOHN E. WETZEL, Commissioner PA. Dept of Corrections; DEPUTY
SECRETARY KLOPOTOSKI; ROBIN M. LEWIS; Chief Hearing Examiner;
MICHAEL WENEROWICZ, Superintendent SCI Graterford; JAY LANE, Deputy
Superintendent; MAJOR FRANCIS FIELD; GARY OLNGER, CCPM;  T. BOLTO,
Unit Manager; FRANK REGAN; J. BIRMINGHAM, PSS; BRANNER, PSS;
COUNSELOR GERARD KELLY; STEWART; WENDY SHAYLOR, Grievance
Coordinator

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:14-cv-00786)
District Judge:  Honorable Lawrence F. Stengel

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 22, 2018

Before:  GREENAWAY, JR., BIBAS and ROTH, Circuit Judges
(Opinion filed February 13, 2019)
_____

OPINION*
_____

PER CURIAM

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

William Curtis, a state prisoner housed at the State Correctional Institution at Graterford, appeals from orders granting the defendants' motions to dismiss and motion for summary judgment. For the following reasons, we will affirm in part, vacate in part, and remand to the District Court for further proceedings.

I.

Curtis, who was convicted of murder, has been serving a life sentence without the possibility of parole since 1982. In 2012, Curtis was moved to the general population at SCI Graterford from the Restricted Housing Unit (RHU), where he had been placed because of disciplinary infractions. To remain in the general population, prison officials required Curtis to participate in Sex Offender Programming (SOP) because, according to Department of Corrections records, he previously had been convicted of aggravated indecent assault. See 42 Pa. Cons. Stat. § 9718.1 (requiring that inmates convicted of certain enumerated sex crimes participate in sex offender treatment). Prison officials threatened that Curtis would be placed in solitary confinement indefinitely if he did not participate in SOP. Curtis, however, denied that he had been convicted of a sex offense, and refused to sign an SOP treatment form that essentially required that he admit to having committed such an offense. As a result, Curtis was returned to the RHU in March 2012. Later, prison officials learned that Curtis did not in fact have a conviction for aggravated indecent assault.

II.

Meanwhile, in 2014, Curtis filed a complaint under 42 U.S.C. § 1983 against fourteen officials and employees of the Department of Corrections, asserting state law claims and alleging violations of his rights under the First, Fifth and Fourteenth Amendments. Emphasizing that he had not been convicted of a sex offense, Curtis alleged that the defendants retaliated against him for refusing to sign the SOP form, compelled him to incriminate himself, and failed to provide due process in requiring that he participate in SOP and in placing him in the RHU.[1] Curtis sought damages, as well as declaratory and injunctive relief.

Five of the defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), which the District Court granted. Curtis v. Wetzel, 2015 WL 5115439 (E.D. Pa. Aug. 28, 2015). As relevant here, the District Court determined that the claims brought against the defendants in their official capacities were barred by the Eleventh Amendment. Id. at *5. With respect to the First and Fourteenth Amendment claims brought against the five defendants in their individual capacities, the District Court concluded that Curtis had failed to allege facts demonstrating that they had any personal involvement in the conduct at issue. Id. at *5-7. The District Court also dismissed the Fifth Amendment claim against all defendants, holding that the DOC could

---

[1] Prison records indicate that in 2007 Curtis was found guilty at a prison disciplinary hearing of "engaging in sexual acts with others or [sodomy]." After Cutis filed his complaint, a hearing examiner concluded that the DOC properly had classified Curtis as a sexual offender and required him to participate in SOP based on the 2007 infraction. Notably, the appellees do not meaningfully argue that that offense has any bearing on Curtis' claims in this lawsuit.

3

properly place Curtis in more restrictive housing and curtail some of his privileges based on his refusal to admit guilt as part of SOP. Id. at \*7.

Following discovery, the parties filed cross-motions for summary judgment. The District Court granted the remaining defendants' motion, rejecting Curtis' First Amendment retaliation claim on the basis that he "did not engage in protected activity when he refused to sign the sex offender program form." Curtis v. Wetzel, 2017 WL 1163888, at \*4 (E.D. Pa. Mar. 29, 2017). According to the District Court, Curtis' "speech was not a matter of public concern. It was personal to him." Id. The District Court further concluded that qualified immunity shielded the defendants from Curtis' First Amendment and Fourteenth Amendment claims: "Based upon the fact that his records indicated that Mr. Curtis was convicted of a sex crime, the defendants could reasonably believe they were not violating clearly established law when they required Mr. Curtis to participate in the sex offender program or return to the restricted housing unit without violating clearly established law." Id. Finally, the District Court held that sovereign immunity barred Curtis's state law claims.[2] Id. at \*5. Following entry of the

---

[2] The state law claims against the defendants were properly dismissed on the basis of sovereign immunity. State prison officials are immune from suit for those actions within the scope of their duties, except in instances in which the immunity has been specifically waived. See 1 Pa. Cons. Stat. Ann. § 2310. Here, the allegations in Curtis' complaint do not fall under any one of the nine listed categories for which immunity has been waived by the Commonwealth of Pennsylvania. See 42 Pa. Cons. Stat. Ann. § 8522(b).

District Court's final order, Curtis filed a timely motion under Federal Rule of Civil Procedure 60(b)(5). The District Court denied that motion and Curtis appealed.[3]

## III.

We have jurisdiction under 28 U.S.C. § 1291. "We review district court decisions regarding both summary judgment and dismissal for failure to state a claim under the same de novo standard of review." Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Kaucher v. Cty. of Bucks, 455 F.3d 418, 422-23 (3d Cir. 2006).

## IV.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

---

[3] The District Court did not abuse its discretion in denying Curtis' 60(b) motion. See Brown v. Phila. Hous. Auth., 350 F.3d 338, 342 (3d Cir. 2003). As the District Court explained, Curtis did not present any valid basis for relief. Instead, he primarily complained that a document he intended to be treated as a request for a permanent injunction was instead docketed as an affidavit.

"Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode, 845 F.2d at 1207). Here, in granting the motions to dismiss, the District Court concluded that Curtis failed to allege the personal involvement of five defendants: DOC Secretary Wetzel; DOC Deputy Secretary Klopotoski; SCI Graterford Superintendent Wenerowicz; and Chief Hearing Examiner Robin Lewis; and Grievance Coordinator Wendy Shaylor. The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement. See Rode, 845 F.2d at 1208.

But we disagree with the District Court's conclusion as it pertains to Defendants Wetzel and Klopotoski. The complaint included inconsistent allegations about those defendants. Curtis first alleged that a DOC counselor, defendant Kelly, issued a misconduct report stating that Wetzel and Klopotoski gave Curtis a 'direct order' to sign the SOP document, Compl., ¶ 42, but he also stated that he "has never had any type of contact with Defendant Wetzel" or "Defendant Klopotoski personally or any type of direct communications or correspondence with Defendant Klopotoski" or "Defendant Wetzel." Compl., ¶¶ 43, 44. The District Court interpreted these statements as a concession by Curtis that Defendants Wetzel and Klopotoski "had no affirmative knowledge or personal involvement in the attempt to force Mr. Curtis to sign the form against his will or punish him for his refusal." Curtis, 2015 WL 5115439, at *6.

6

Regardless whether such an interpretation was proper,[4] the District Court had the benefit, we note, of a DOC misconduct form that Curtis attached to his opposition to the motions to dismiss. On that form, a prison official's handwritten notes indicated that Curtis declined to sign his SOP treatment order and alleged that Curtis' "refusal to obey a previous written order from Secretary Wetzel as well as Deputy Secretary Klopotoski constitutes refusing an order." (Dist. Ct. Doc. No. 18, p. 13). In light of this statement from a prison official that Defendants Wetzel and Klopotoski issued a written order to Curtis, we conclude that the District Court erred in granting a motion to dismiss on the ground that those defendants had no apparent personal involvement.

V.

With respect to Curtis' First and Fourteenth Amendment claims, the District Court concluded that the defendants were entitled to qualified immunity. Curtis, 2017 WL 1163888, at *4-5. Qualified immunity is an affirmative defense that "shield[s] officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). To overcome that immunity, the facts must show (1) the violation of a constitutional right and (2) that the right was clearly established at the time of the alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201

---

[4] See Henry v. Daytop Village, Inc., 42 F.3d 89, 95 (2d Cir. 1994) ("Pursuant to Rule 8(e)(2), therefore, we may not construe Henry's first claim as an admission against another alternative or inconsistent claim."). But see Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir. 1993) (holding that pro se plaintiff's claims were properly dismissed where they relied on "wholly conclusory and inconsistent allegations").

(2001). A court may address these prongs in either order in light of the circumstances in the particular case. Pearson, 555 U.S. at 236. A government official's conduct violates clearly established law when, at the time of the challenged conduct, every reasonable official would understand that what he is doing violates the right alleged. Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). Notably, "qualified immunity applies regardless of whether the government official's conduct results from a mistake of law, mistake of fact, or mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231 (internal quotation marks omitted).

Here, the defendants required that Curtis participate in SOP based on information contained in his institutional file. In particular, Curtis' "Integrated Case Summary – Initial Classification Summary" stated that he had been charged with "Aggravated Indecent Assault" and that the disposition was "Guilty." But, as Curtis maintained, that information was inaccurate; Curtis did not have a conviction for aggravated indecent assault. Cf. Sample v. Diecks, 885 F.2d 1099, 1108 (3d Cir. 1989) (stating that the "administration of a system of punishment entails an unavoidable risk of error."). Nevertheless, the defendants reasonably relied on the DOC's records. Cf. Alston v. Read, 663 F.3d 1094, 1100 (9th Cir. 2011) (stating, in case alleging over-detention, "that there is no clearly established duty on a prison official to review a prisoner's original court records beyond those in his institutional file"). At the time that the defendants required Curtis to participate in SOP, he had not presented any evidence that the prison records were inaccurate. Moreover, Curtis has not identified any clearly established law

8

that would have required prison officials to investigate his claims before requiring that he participate in SOP. See Dock v. Latimer, 729 F.2d 1287, 1290 (10th Cir. 1984) ("there simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations"). Under these circumstances, we conclude that qualified immunity protects the defendants from Curtis' claim for damages under the First and Fourteenth Amendments.

But qualified immunity does not extend to Curtis' claims for declaratory and injunctive relief. See Hill v. Borough of Kutztown, 455 F.3d 225, 244 (3d Cir. 2006). Accordingly, we will remand those matters to the District Court. See Montanez v. Secretary Pa. Dept. of Corr., 773 F.3d 472, 488 (3d Cir. 2014). If Curtis' requests for declaratory and injunctive relief are not moot,[5] the District Court should consider whether labeling Curtis a sex offender and requiring that he attend SOP violated his First and Fourteenth Amendment rights.[6] See Newman v. Beard, 617 F.3d 775, 781 (3d Cir. 2010)

_____

[5] In this connection, we note that it is not clear whether Curtis' classification as a sex offender (based on his prison infraction, see *supra* note 1, rather than the nonexistent aggravated indecent assault conviction) provided an independent basis for placing him in the RHU and requiring his participation in SOP. See Jordan v. Sosa, 654 F.3d 1012, 1033 (10th Cir. 2011) ("if we were to issue an injunction or declaratory judgment to Mr. Jordan, we would be doing so without the benefit of specific, concrete information concerning his current conditions of confinement.").

[6] With respect to Curtis's First Amendment claim, the District Court also concluded that his refusal to sign the SOP form was not protected speech because it "was personal to him[,]" rather than "a matter of public concern." Curtis, 2017 WL 1163888, at *4. The appellees concede that this analysis was "legally flawed," see Appellees' Br., p. 16 n. 11, because, contrary to the District Court's conclusion, "the First Amendment forbids retaliation for speech even about private matters." Eichenlaub v. Twp. of Indiana, 385

(holding, where the government had proved at trial that the defendant had committed sex offenses, that that the admission of guilt for past sexual offenses is rationally related to legitimate penological objectives); Renchenski v. Williams, 622 F.3d 315, 328 (3d Cir. 2010) (agreeing "that the stigmatizing effects of being labeled a sex offender, when coupled with mandatory behavioral modification therapy, triggers an independent liberty interest emanating from the Due Process Clause of the Fourteenth Amendment."). We express no opinion on these issues.

## VI.

As with his First and Fourteenth Amendment claims, Curtis' Fifth Amendment claim fails on qualified immunity grounds to the extent that he sought damages. But it survives as to his request for declaratory and injunctive relief, to the extent such relief is not moot. See *supra* note 5. The District Court concluded that Curtis failed to state a claim for the denial of his Fifth Amendment rights. We disagree. Relying on Renchenski v. Williams, the District Court concluded that transferring Curtis to more restrictive housing, and imposing other restrictions, as a consequence for refusing to admit to his offenses as the SOP requires did not violate his right against self-incrimination. 622 F.3d 315, 334-35 (3d Cir. 2010). In Renchenski, we concluded that the consequences faced by a Pennsylvania prisoner who refused to participate in sex

---

F.3d 274, 284 (3d Cir. 2004); Mack v. Warden Loretto FCI, 839 F.3d 286, 299 n.69 (3d Cir. 2016) (stating that "that the rationale for the public/private concern distinction in the public employment context does not apply in other contexts, including prison settings.").

offender treatment – including loss of prison job, disciplinary custody for 90 days, cell restriction for 30 days, suspension of the right to receive visitors, and denial of access to television, radio, and the commissary – did not constitute compulsion for Fifth Amendment purposes. Id. To the extent that Curtis faced similar consequences, we agree that the conditions do not rise to the requisite level of compulsion to state a claim for a Fifth Amendment violation. See McKune v. Lile, 536 U.S. 24, 41-42 (2002); see also Roman v. DiGuglielmo, 675 F.3d 204, 214 (3d Cir. 2012) (stating that "those penalties that merely alter the degree of comfort or freedom that an inmate is afforded, within the context of his confinement, but that otherwise remain within the permissible bounds of the inmate's prescribed sentence, are differences in measure alone and thus do not amount to compulsion under the Fifth Amendment.").

Curtis also claimed, however, that the defendants threatened to place him in solitary confinement indefinitely. Notably, after the District Court rejected Curtis' Fifth Amendment claim, we "observed a growing consensus" about the "extremely serious and potentially dire consequences of lengthy exposure to the conditions of solitary confinement." Palakovic v. Wetzel, 854 F.3d 209, 22-265 (3d Cir. 2017) (citing Williams v. Sec'y Pa. Dep't of Corr., 848 F.3d 549, 66-68 (3d Cir. 2017)). Indefinite confinement in restrictive housing can amount to an atypical and significant hardship in relation to the ordinary incidents of prison life. See Wilkinson v. Austin, 545 U.S. 209, 223-24 (2005). When a penalty does amount to such a hardship, "that penalty is sufficiently compelling to constitute a Fifth Amendment violation." Roman, 675 F.3d at

11

Under this formulation, it is not clear whether the defendants' threats to place Curtis in solitary confinement indefinitely rose to the level of compulsion. Accordingly, we will remand this issue to the District Court for consideration in the first instance.

VII.

For the foregoing reasons, we will affirm in part and vacate in part the District Court's August 31, 2015, and March 29, 2017, orders and remand for further proceedings. In sum, we will affirm the District Court's denial of Curtis' state law claims. See *supra* note 2. Furthermore, we conclude that the District Court properly determined that qualified immunity shielded the defendants from Curtis' claims for damages under the First, Fifth, and Fourteenth Amendments. But we will vacate the District Court's judgment to the extent that it rested on a conclusion that Defendants Wetzel and Klopotoski had no personal involvement in the alleged constitutional violations. With respect to Curtis' request for declaratory and injunctive relief, we will vacate the District Court's judgment insofar as it rejected Curtis' First Amendment claim on the basis that his speech was personal, rather than a matter of public concern, and its determination that the defendants' threats of solitary confinement did not rise to the level of compulsion for Fifth Amendment purposes. We remand for proceedings consistent with this opinion.